[No. 24098.  *En Banc.*  February 23, 1933.]

CHARLES G. CARSTEN, *Appellant*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent*.[1]

*Gordon Powers,* for appellant.

*The Attorney General, Harry Ellsworth Foster,* and
*Chas. O. Flint,* for respondent.

*Kenneth Durham, Amicus Curiae.*

TOLMAN, J.—One Lewis, regularly employed by a
railroad company for hire and residing on a tract of
land adjacent to the city of Vancouver, in this state,
in July 1931, employed appellant, Carsten, a carpenter
by occupation, by the day to assist him in building a
chicken house upon his property. Lewis, the owner,
worked with and assisted Carsten in the construction
of the building, and the relations between them were,
apparently, such as usually obtain when an unskilled

[1]Reported in 19 P. (2d) 133.

owner employs skilled labor to produce a certain result.

In the course of the work, Carsten, through no fault or negligence on the part of his employer, suffered an injury which caused disability. He made claim for compensation to the department of labor and industries, which claim was rejected. Successive appeals to the joint board and to the superior court were unsuccessful, and he has appealed to this court.

■ The one question here presented is: Was appellant, while employed as already stated, a workman within the meaning of our workmen's compensation act?

The statute in force at the time of the injury was chapter 132, Laws of 1929, p. 325, § 1, in which we find the following definitions:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-hazardous work or who contracts with another to engage in extra-hazardous work.

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment:" Rem. Rev. Stat., § 7675.

Since, in order to collect premiums and create the fund from which an injured workman may be compensated, employers must be identified and classified, and since the statute in plain terms designates only those employers who are engaged in extrahazardous work and provides that the employee in order to be a workman within the act, must be an employee of such an employer, it appears almost conclusively that the legislature did not intend to bring within the act the odd-job

man, or the man employed on occasions by an ordinary householder to repair or improve his property.

A contrary holding would lead to impossible results. The collection of premiums or assessments is a vital necessity, which comes first. If every householder is liable for such premiums covering every odd job of an hour's duration, or even for a job covering several days' time of a workman in building a chicken house, a cheap garage, or other structure on his property, then the state-wide effort required to collect such premiums will be out of all proportion to the sums involved, and the result will be that the state will expend at least two dollars for every dollar thus collected for the compensation fund. We see nothing in the statute law which calls for a construction leading inevitably to such an impractical, inefficient and burdensome result.

Nothing here said, of course, applies to temporary or casual employment of a workman or workmen by those engaged in an extrahazardous business as defined by the statute, nor have we overlooked that provision of Rem. Rev. Stat., § 7692, which forbids cities and towns the right to issue building permits "to any person" who has not submitted an estimated pay roll and paid the premiums thereon. That provision of the law has no effect in a case like this, where no building permit was required or could have been issued. And we need not now inquire whether the purpose of that enactment was only as a check upon those engaged in building as a business, or if thereby the legislative intent was to extend the act to owners who build for themselves by day labor.

We therefore hold that the service performed by the workman does not in and of itself bring him under the act, but it must be a service performed for an employer who comes under the act. We think these conclusions are not out of harmony with our previous holdings. In

*Parker v. Pantages Theater Co.,* 143 Wash. 176, 254 Pac. 1083, we held that, to come under the act, the workman must be engaged in an industry which has been classified as extrahazardous. *Edwards v. Department of Labor & Industries,* 146 Wash. 266, 262 Pac. 973, is very nearly, if not quite, decisive of this case. It was there said:

"As a matter of common knowledge, many concerns in the state are engaged in the regular business of transfer, drayage and hauling for the general public for hire. Those are manifestly the 'classes of business' or 'industries' which the legislature had in mind, in enacting the statutes before quoted. L. Marks & Company was not engaged in any business of transfer, drayage and hauling for hire, but was engaged only in hauling its own goods and chattels. Neither was it engaged in an industry, such as warehousing, an incidental part of which was transfer, drayage and hauling, or team and truck driving."

If hauling one's own goods is not the business of transfer, drayage or hauling for hire, then it would seem that a householder who erects a chicken house on his home property is not, by reason of that act, engaged in the business of building.

The still more recent case of *Thurston County Chapter, American Red Cross v. Department of Labor & Industries,* 166 Wash. 488, 7 P. (2d) 577, is even more decisive. It is there said, in effect, again and again, that the compensation act is limited to those industries which are conducted for profit or gain and those employers who are engaged in such industries for profit or gain.

While a householder may, indirectly, receive profit or gain from the erection of a chicken house on his premises, he cannot, under the facts of this case, be said to be engaged in the erection of chicken houses

for profit within the meaning of the statute, even though it be given the most liberal interpretation.

The words of the statute—"Workman means every person . . . who is engaged in the employment of any employer coming under this act"—cannot be construed away, and must be given their natural and ordinary meaning and effect.

We are convinced that the judgment appealed from is right, and it is therefore affirmed.

BEALS, C. J., STEINERT, HOLCOMB, and PARKER, JJ., concur.

MILLARD, J. (dissenting)—Charles G. Carsten was an experienced carpenter. For many years, he earned his living at that trade. He was working at his trade at the time of the accident out of which this action arose. Ed Lewis earned his living as a railroad employee—. that was his regular business—and he had no other gainful occupation or business. He was not engaged in the business or industry of constructing buildings. Lewis owned, and resided on, a small tract of land in Clark county. In July, 1931, Carsten was employed by Lewis at a daily wage to assist the latter in constructing a frame chicken house on that tract. During the course of his employment, and after working thereat for several days, Carsten was injured. His claim for compensation under the workmen's compensation act was disallowed by the department of labor and industries. That rejection, on appeal to the superior court, was sustained on the ground that, when injured, Carsten was not employed by an employer engaged in extrahazardous work. Carsten has appealed.

Only one question is presented by the appeal. Is one employed otherwise than for the purpose of the employer's trade or business entitled to the benefit of the workmen's compensation act?

Respondent argues: The workmen's compensation act does not apply to a home owner constructing or repairing buildings on his own land. The act applies exclusively to persons engaged in extrahazardous work as a business or industry. The work in which the workman or employee is engaged at the time he suffers an injury does not determine the applicability of the act. The business of the master or employer fixes the status of the servant or employee under the act. "The question, in its final analysis, is whether or not the master in this case 'comes under the act.' "

The work or occupation of the appellant at the time he suffered the injury for which he seeks compensation, was defined and classified by the statute as extrahazardous. When a person engages in extrahazardous work in which a workman is, or workmen are, employed for wages, such person is an employer under the workmen's compensation act. The facts in the case at bar bring Lewis, the employer, within the purview of the statute. That being so, the appellant was a "workman" engaged in the employment of an employer coming under the act. The pertinent provisions of the statute are as follows:

"There is a hazard in all employment, but certain employments have come to be, and to be recognized as being inherently constantly dangerous. This act is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term 'extrahazardous' wherever used in this act, to-wit: . . . buildings being constructed, repaired, moved or demolished . . . " Rem. Rev. Stat., § 7674.

"Except when otherwise expressly stated, employer means any person . . . while engaged in this state in any extra-hazardous work or who contracts with another to engage in extra-hazardous work.

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment." Chapter 132, Laws of 1929, p. 325, § 1; Rem. Rev. Stat., § 7675.

I cannot agree that, as Lewis did not employ the appellant workman to build or repair as an incident to a gainful business or industry of the employer, the appellant was not within the protection of the statute. This court has never held that one employed otherwise than for the purpose of the employer's trade or business was not entitled to the benefit of the statute. In the absence of a provision expressly excluding such employees—no extravagant principle of inclusion is necessary to bring appellant within the operation of the compensation act—all persons engaged in the employment of any employer engaged in any extrahazardous work are workmen "under this act." Engaged in work means no more than occupied in doing that work or devoting attention and effort to that work. One can be so engaged temporarily, or that may be one's business.

I can not agree that the cases cited by the majority are in point. In *Parker v. Pantages Theater Co.,* 143 Wash. 176, 254 Pac. 1083, we held that the washing of electric light globe signs by an employee of the owner of the building to which such signs were affixed, was not an extrahazardous employment under the workmen's compensation act, classifying "window washing" and "washing or cleaning buildings" as an extrahazardous employment.

*Edwards v. Department of Labor & Industries,* 146 Wash. 266, 262 Pac. 973, is likewise inapplicable in view of the statute. We held that the classification of team and truck-driving as an extrahazardous employment did not include the driving of a delivery truck

for a merchant; that, under the statute, team and truck-driving related to the business or trade of the employer, and that wholesale merchants were not in the team and truck-driving business.

*Thurston County Chap. etc. v. Department of Labor & Industries,* 166 Wash. 488, 7 P. (2d) 577, holds that, where one is employed by a charitable organization, such employee is not protected by the act by reason of the fact that charitable organizations, as employers, are not within the operation of the act.

The benefit of the appellant's labor in building the chicken house inured to the employer, the landowner. While not the regular trade or business of Lewis, yet during the time he was supervising and aiding in the construction of a building on his land, Lewis was engaged in, or occupied in doing, or devoting attention and effort to, extrahazardous work. If he supervised the construction of a mansion for himself and employed fifty workmen, it would hardly be contended that the statute did not apply. While the work would be of longer duration, the employer would be engaged only temporarily in the business of extrahazardous work. The principle would be the same whether he built for himself, or for another, a castle or a shack, or whether he employed fifty men or only one man to perform the work. Whether he builded for another or for himself, when he employed persons to engage in that work and that work was extrahazardous, the employment was under the act.

By statute and judicial interpretation, other jurisdictions have excluded from the protection of their workmen's compensation act the person whose employment is purely casual and the person whose employment is not for the purpose of the employer's regular trade or regular business. The language of the stat-

utes of those states differs from the language of our statute, hence such authorities are not helpful.

Our state was not concerned solely in the protection of those operating industries and businesses. The legislature emphatically declared that the compensation act was intended to include the industrial classes as a whole; that each wage worker, when injured in the course of extrahazardous employment, was entitled to the protection afforded by the act. The protective features of the act were not, as respondent contends, intended for only those wage workers who are employed in an industry or a business operated for profit.

· "The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker." Rem. Rev. Stat., § 7673.

Websterian definitions lend support to the view that the language "while engaged in any extrahazardous work" means that, to bring appellant within the operation of the statute, his employer must have been engaged in chicken-house and other building construction for profit, or as a business or industry.

Such remedial legislation as the compensation act should be liberally interpreted—that spirit has in the past characterized this court's interpretations of the act, if interpretation were necessary. However, the statute is clear and needs no interpretation. We find no language in the statute expressly or impliedly excluding from the benefit of the act one who is employed otherwise than for the purpose of the employer's regular trade or business.

The judgment should be reversed.

BLAKE, MITCHELL, and MAIN, JJ., concur with MILLARD, J.