[No. 24559. Department Two. July 13, 1933.]

ETHEL L. ANDERSON, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

[1]Reported in 23 P. (2d) 879.

484

*The Attorney General* and *Browder Brown, Assistant,* for appellant.

*Ralph S. Pierce* and *Edmund Stafford,* for respondent.

*Harry Ellsworth Foster, amicus curiae.*

MAIN, J.—This is an appeal from a judgment of the superior court reversing an order of the department of labor and industries which disallowed a widow's claim for the death of her husband.

Clark-Nickerson Lumber Company, a corporation, for some years owned and operated a sawmill in the city of Everett, which was located upon the water front. Adjacent to the mill on the water side was what is referred to as a logway and a boom. December 19, 1931, the corporation closed down the mill, and on February 24, 1932, E. A. McIntosh was appointed receiver thereof by the United States district court.

After the receiver took over the property, he employed watchmen, one of whom was Martin A. Anderson, who worked the night shift, whose duties were to patrol the premises for the purpose of detecting fire, and also to prevent pilfering and thefts. After the receiver was appointed, he took up with the department of labor and industries whether the men that he employed as watchmen were under the workmen's compensation act, and was informed that it had been the uniform holding of the department that a mill, inactive and not in operation, did not come under the

act. The receiver then procured a policy of voluntary compensation insurance, by which policy the insurance company agreed to pay substantially the same schedule of awards as the industrial insurance act.

Adjacent to the sawmill, and on ground owned by the Clark-Nickerson Lumber Company, the International Wood and Sulphite Company, a corporation, operated a mill used for the purpose of producing pulp chips, and employed dangerous machinery therein. The chipping plant, as it is called, owned its own building and had a lease or contract for the use of the ground upon which it stood. After the receiver was appointed for the mill company, the chipping plant continued to operate, at least a substantial portion of the time. The watchmen employed by the receiver were not required to patrol the chipping plant. The International Wood and Sulphite Company paid no part of their compensation, and no understanding existed between that company and the receiver to the effect either that the watchmen should patrol the chipping plant or that the sulphite company would contribute to their compensation.

May 10, 1932, Anderson, a night watchman, met his death by drowning, while in the course of his employment. As above indicated, thereafter his widow made an application for compensation under the industrial insurance act, and the department rejected the claim. An appeal was taken to the joint board, which likewise rejected the claim, and an appeal was taken to the superior court, where a hearing was had which resulted in findings of fact from which it was concluded that the widow was entitled to compensation. Judgment was entered reversing the order of the department and also of the joint board, from which the department appealed.

The controlling question, of course, is

whether the deceased, at the time he met his death, was engaged in an extrahazardous employment within the contemplation of the workmen's compensation act. Section 7674, Rem. Rev. Stat., which is one of the sections of that act, provides:

"There is a hazard in all employment, but certain employments have come to be, and to be recognized as being inherently constantly dangerous. This act is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term 'extrahazardous' wherever used in this act, to wit:

"Factories, mills and workshops where machinery is used; . . . *Provided, however,* the following operations shall not be deemed extrahazardous within the meaning, or be included in the enumeration, of this section to wit: . . .

"The director [department] of labor and industries through and by means of the division of industrial insurance shall have power, after hearing had upon its own motion, or upon the application of any party interested, to declare any occupation or work to be extrahazardous and to be under this act. . . ."

Section 7675 provides:

"In the sense of this act words employed mean as here stated, to-wit: . . .
"Mill means any plant, premises, room or place wherein machinery is used, . . ."

It will be observed that, in each of those sections, mill or mills are described or defined as a place where "machinery is used." Whether an occupation in law is extrahazardous depends upon whether the act has so declared it, or it has been so found by the department of labor and industries. *Guerrieri v. Industrial Insurance Commission,* 84 Wash. 266, 146 Pac. 608; *Parker v. Pantages Theater Co.,* 143 Wash. 176, 254

Pac. 1083. Extrahazardous industries, however, or employments are not all within the act. *Barney v. Anderson,* 116 Wash. 352, 199 Pac. 452; *Edwards v. Dept. of Labor and Industries,* 146 Wash. 266, 262 Pac. 973.

In this case, as already appears, the sawmill, after the receiver was appointed, did not operate. It was not a place wherein machinery was used, and for this reason it was not under the act. Neither has it been brought under the act by a declaration of the department. Nowhere in the act or by a declaration of the department is the work of a watchman classified as extrahazardous. In 1923, the legislature passed an act (Rem. Rev. Stat., § 7674a) by which the work performed by salaried peace officers of the state, the counties and the municipal corporations was declared to be extrahazardous, but watchmen were not covered therein.

In determining the applicability of the act to a given case, there are two requisites: (a) The business of the corporation in which the employers are engaged must have been classified as extrahazardous; and (b) the injury sustained, for which compensation was claimed, must have been received by an employee while engaged in the course of extrahazardous work which was classified as such. *Carsten v. Dept. of Labor and Industries,* 172 Wash. 51, 19 P. (2d) 133; *Denny v. Dept. of Labor and Industries,* 172 Wash. 631, 21 P. (2d) 275. Since the receiver in the case now before us was not engaged in a business classified as extrahazardous and the work of a watchman has not been so classified, it follows that the department properly rejected the claim of the widow for compensation for her husband's death, and that the trial court was in error in setting aside the department's order.

Some reference has been made to the fact that

the receiver testified that, in addition to the watchmen, he had at other times employed men to load lumber for shipment. The extent of these operations is not disclosed by the testimony, and we see nothing in the mere fact that the receiver from time to time employed men to load lumber for shipment which would bring the watchmen within the contemplation of the industrial insurance act. Neither can it be held that the watchmen were under the act by reason of the close proximity of the plant of the International Wood and Sulphite Company to that of the Clark-Nickerson Mill Company. As already pointed out, the watchmen did not patrol the plant of the International Wood and Sulphite Company, and were not required to do so.

Cases are cited from other jurisdictions holding that, when a receiver operates an extrahazardous plant, it would be under the industrial insurance acts of those states. But those cases are of no controlling importance here, because in this case the receiver did not operate the plant, and, while it was in his possession, the corporation was inactive. Whether the receiver in this case, had he been operating the plant, would have been under the act, it is not necessary here to determine, and we express no opinion upon that question.

The judgment of the superior court will be reversed, and the cause remanded to enter a judgment as herein indicated.

BEALS, C. J., STEINERT, TOLMAN, and BLAKE, JJ., concur.