[No. 27806.   *En Banc.*   January 5, 1940.]

H. C. CAMPBELL, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 97 P. (2d) 642.

*The Attorney General* and *Browder Brown, Assistant,* for appellant.

*Harry Ellsworth Foster* and *Phil K. Eaton,* for respondent.

*Kenneth Durham, Ballinger, Clark, Mathewson & Force, Little & Leader, William H. Abbott, Weter, Roberts & Shefelman, Green & Burnett, Robert S. Macfarlane, Dean H. Eastman,* and *Earl F. Requa, amici curiae.*

GERAGHTY, J.—This cause comes here on the appeal of the department of labor and industries for review of a judgment of the superior court, directing the department to cause to be issued to the respondent a cashable warrant, drawn upon the accident fund, for the monthly compensation adjudged to be due him by the department. The appellant will hereafter be referred to as "department," and the respondent as "claimant."

The claimant was injured July 1, 1938, while engaged in cutting cordwood for one Hebert, doing business under the name of Hebert Wood Company. His claim for compensation was recognized by the department, and he was classified as having a temporary total disability, entitling him to a monthly compensation in a stated amount.

The claimant's monthly compensation was paid by the department, through warrants drawn upon the accident fund, until August 1, 1939. On or about that date, he received a letter from the director of the de-

partment informing him that, owing to the insolvent condition of the funds in Class 50-3, embracing cordwood cutting, the industrial insurance class fund from which claimant's compensation warrants were payable, it would be impossible, at that time, to issue warrants payable in cash; and that this condition affected "all future payments from the Accident, Accident Reserve and Medical Aid Funds of Class 50-3."

Later, August 15, 1939, the department caused to be issued to the claimant, by the state auditor, a warrant, representing the amount of his August compensation, thirty-five dollars. This warrant was in the customary form, drawn upon the accident fund in the state treasury, but had stamped across its face the words, "Not Payable—Lack of Funds." On the back of the warrant, there was the certificate of the director to the effect that there were not sufficient funds in the class (50-3) upon which it was drawn, and that it was to be paid by the employer of the injured workman, in accordance with § 26, chapter 74, Laws of 1911, p. 371 (Rem. Rev. Stat., § 7705 [P. C. § 3495]). Under the director's endorsement is that of the state treasurer's, to the effect that the warrant was not payable for want of funds in the mentioned class. It is admitted that claimant's employer is insolvent and, also, that subclass 50-3, considered as a separate unit, is hopelessly insolvent. The accident fund is admitted to be solvent.

On the claimant's appeal to the joint board, the action of the department was sustained. The claimant then appealed to the superior court, which reversed the department and entered the judgment from which the present appeal is taken.

By the terms of Rem. Rev. Stat., § 7676 [P. C. § 3471], industry is divided into fifty classes, subdivided into some ninety subclasses. As we understand it, the

contention of the department is, in effect, that there are as many accident funds as there are subclasses of industry within the purview of the act, while the claimant contends, and the trial court held, that, for payment of the claims of injured workmen, there is but one accident fund, namely, the fund, designated as such, required to be maintained in the state treasury and against which all warrants for compensation to injured workmen are directed to be drawn.

The issues involved require an examination, somewhat in detail, of the financial set-up of the workmen's compensation act as it is outlined in Rem. Rev. Stat., §§ 7676, 7679, and 7705.

Section 7676 has to do with the apportionment, among the several classes and subclasses, of the burden of sustaining the accident fund. It provides how accounts shall be kept by the department with the several classes of contributors, to the end that the burden imposed upon industry shall be equitably distributed, having relation to the hazards of the several classes and the cost experience of individual employers within the classes. On the other hand, § 7679 [P. C. § 3472] has to do with the management of the fund into which the contributions of the several classes of industry are paid and the disbursements of the moneys so collected, in accordance with the provisions of the act.

Section 7676, as amended by the 1939 session of the legislature, chapter 138, p. 388, provides:

"Inasmuch as industry should bear the greater portion of the burden of the cost of its accidents, each employer shall prior to the fifteenth day of every month, pay into the state treasury (1) for the accident fund and (2) for the medical aid fund, a certain number of cents for each man hour worked by the workmen in his employ, engaged in extra-hazardous employment; if, however, there should be a deficit in any class or sub-class the Director of Labor and Indus-

tries, through the Supervisor of Industrial Insurance, is hereby authorized and directed to assess the same against all the contributors to such class or sub-class during the calendar year or fraction thereof in which said deficit was incurred or created. The Director of the Department of Labor and Industries shall have the power to promulgate, change and revise such rates according to the condition of the accident and medical aid funds, . . ." Rem. Rev. Stat. (Sup.), § 7676.

The section then outlines a formula for determining the amounts to be paid into the accident fund by the several classes and subclasses of industry and sets up a schedule of basic premium rates for the fund, to remain in force until modified by the director. The section continues:

"For the purpose of such payments into the accident fund, accounts shall be kept with each industry in accordance with the classification herein provided and no class shall be liable for the depletion of the accident fund from accidents happening in any other class. Each class shall meet and be liable for the accidents occurring in such class. The fund thereby created shall be termed the 'accident fund' which shall be devoted to the purpose specified for it in this act. . . .

"It is the intent that the accident fund created under this section shall ultimately become neither more nor less than self-supporting, exclusive of the expense of administration, and if in the adjustment of premium rates by the Director of Labor and Industries the moneys paid into the fund by any class or classes shall be insufficient to properly and safely distribute the burden of accidents occurring therein the Department may divide, rearrange or consolidate such class or classes, making such adjustment or transfer of funds as it may deem proper."

We think the just interpretation of the provisions of this section is not that an injured workman is to be denied payment out of the accident fund of the compensation awarded him because the department's ac-

counts show a deficiency in the "class fund" of the class in which the workman was employed, but, rather, that the department's financial structure shall be so managed and adjusted as that the accident fund shall always be adequate to meet its requirements. This end is to be attained through the exercise by the department of the ample power lodged in it to "promulgate, change and revise such rates according to the condition of the accident and medical aid funds" and where, in the adjustment of rates, the money paid into the fund by any class or classes shall be insufficient to properly and safely distribute the burden of accidents occurring therein, to "divide, rearrange or consolidate such class or classes, making such adjustment or transfer of funds as it may deem proper." This view is sustained by the unqualified mandate of Rem. Rev. Stat., § 7679, to the following effect:

"Each workman who shall be injured in the course of his employment, or his family or dependents in case of death of the workman, shall receive out of the accident fund compensation in accordance with the following schedule, and, except as in this act otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever."

That the accident fund has always been considered by the legislature a single fund is evidenced by the fact that, beginning with the 1911 session, when the act was passed, successive legislatures have made lump-sum appropriations out of the fund for payment of claims and awards. The 1939 session appropriated eight million five hundred thousand dollars from the "Accident Fund" for "Claims and Awards and Other Expenses Provided by Law." In addition to this, there were, of course, appropriations from the general fund for payment of the salaries, wages, and operating ex-

penses of the department, which are to be borne by the state and not specially charged against industry.

We now come to a consideration of Rem. Rev. Stat., § 7705, upon which the department relies to sustain its issue to the claimant of the so-called "red" warrant.

This section was embraced in the original act of 1911 as § 26, and remains unchanged. It is, so far as material, as follows:

"Disbursement out of the funds shall be made only upon warrants drawn by the state auditor upon vouchers therefor transmitted to him by the department and audited by him. The state treasurer shall pay every warrant out of the fund upon which it is drawn. If, at any time, there shall not be sufficient money in the fund on which any such warrant shall have been drawn wherewith to pay the same, the employer on account of whose workman it was that the warrant was drawn shall pay the same, and he shall be credited upon his next following contribution to such fund the amount so paid with interest thereon at the legal rate from the date of such payment to the date such next following contribution became payable, and if the amount of the credit shall exceed the amount of the contribution, he shall have a warrant upon the same fund for the excess, and if any such warrant shall not be so paid, it shall remain, nevertheless, payable out of the fund. . . ."

Provision was made in the original act for setting apart, out of the accident fund, a reserve to insure payment of awards made on account of death or permanent total disability. This reserve is provided for in succeeding amendments of the act and is sometimes referred to as a "fund," but it seems to have been treated, in practice, rather as a segregation of the accident fund than as a distinctly separate fund. Warrants drawn against it are captioned "Accident (Reserve) Fund." By later legislation, a medical aid fund was

provided for. Neither the reserve nor the medical aid fund is involved here. The only fund in the state treasury against which a warrant could have been drawn in favor of the claimant was the accident fund.

Taken literally, the language of § 7705 makes against the contention of the department rather than in favor of it, since the claimant's warrant is drawn by the auditor upon the "Accident Fund," a solvent fund. The section requires that "The state treasurer shall pay every warrant out of the fund upon which it is drawn." There being sufficient money in the accident fund on which the claimant's warrant was drawn, this section conferred no authority upon the state treasurer to stamp on the face of the warrant the endorsement, "Not Payable—Lack of Funds," nor to make on the back of the warrant a certificate that there were no funds available in the class upon which it was drawn. Neither is there any authority in the section for the endorsement made on the back of the warrant by the director of the department.

█ In construing the workmen's compensation act, we are to have in mind a principle often announced by this court, that the act is highly remedial and, as such, is to be liberally construed with a view to the accomplishment of its beneficent purpose, namely, to withdraw all phases of the premises from private controversy and, by a plan of industrial insurance, to provide "sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents."

Some question is raised as to the constitutionality of the act if the judgment of the trial court is affirmed. But clearly, that question is not presented by the issues on this appeal. The department has not raised it, and the clients represented by *amici curiae* are not parties to the action.

The judgment of the superior court was correct, and it is accordingly affirmed.

BLAKE, C. J., MAIN, BEALS, and MILLARD, JJ., concur.

STEINERT, J. (dissenting)—I am of the opinion that the wording and spirit of the various sections of the statute cited in the majority opinion contemplate that the claims of injured workmen and their dependents shall be paid from funds credited to the classes and subclasses to which the respective workmen belong, and not from the accident fund regardless of whether or not the particular class or subclass is insolvent. Otherwise, the result will ultimately be that other injured workmen and their dependents will be deprived of their just proportion of compensation simply because the fund out of which they are entitled to be paid has been depleted by withdrawals made for the benefit of insolvent classifications.

SIMPSON, JEFFERS, and ROBINSON, JJ., concur with STEINERT, J.