[No. 27807. *En Banc.* January 5, 1940.]

Anna Lassiter, *Respondent,* v. The Department of Labor and Industries, *Appellant.*[1]

The *Attorney General* and *Browder Brown, Assistant,* for appellant.

*Harry Ellsworth Foster* and *Phil K. Eaton,* for respondent.

*Little & Leader, William H. Abbott, Weter, Roberts & Shefelman, Green & Burnett, Robert S. Macfarlane, Dean H. Eastman,* and *Earl F. Requa, amici curiae.*

[1]Reported in 97 P. (2d) 645.

GERAGHTY, J.—This cause is before us on the appeal of the department of labor and industries, hereafter referred to as "department," from a judgment of the superior court reversing an order of the joint board of the department discontinuing payment of a pension awarded to the respondent, hereafter referred to as "claimant." The facts are stipulated and may be summarized as follows:

The claimant's deceased husband, Tom Lassiter, was killed July 12, 1937, while engaged in extrahazardous employment as a pulpwood cutter. July 24, 1937, claimant filed her claim with the department for compensation, and, January 6, 1938, she was awarded a statutory monthly pension. The required reserve, computed at $3,807.72, was set aside in the accident fund to insure payment of her award, in accordance with the requirement of subd. (e) of Rem. Rev. Stat., § 7679 [P. C. § 3472].

At the time the pension reserve was set up, industrial insurance Class 50-3, which included pulpwood cutting, was insolvent and without funds to set up the necessary pension reserve, but the department borrowed the sum from the other solvent classes of the industrial insurance which had credit balances, and "said sum was thereupon transferred to the accident reserve fund, to the credit of the claimant, Anna Lassiter, and said Class 50-3 has been insolvent ever since."

July 21, 1939, the attorney general advised the department that the proceeding followed by the department in setting up the pension reserve in favor of the claimant was erroneous; that the then unexpended balance of her reserve should be returned to the accident fund; and that future pension warrants should be issued to her in accordance with the provisions of Rem. Rev. Stat., § 7705 [P. C. § 3495]. Up to that

time, the claimant had been regularly paid her monthly pension of thirty-five dollars.

August 4, 1939, the state auditor issued to the claimant a warrant drawn upon the accident (reserve) fund, in the sum of thirty-five dollars, her monthly pension award. The warrant was stamped on its face, "Not Payable—Lack of Funds." On the back, there is a certificate by the director of the department that there were

". . . not sufficient funds in Class (50-3) upon which this warrant is drawn. This warrant is to be paid by the employer of the injured workman in accordance with Section 26, Chapter 74, Session Laws of 1911 (Sec. 7705 R. R. S.), State of Washington,"

and the further endorsement by the state treasurer, "Not payable for want of funds in above-mentioned class."

The claimant presented the warrant to the employer of her husband, and its payment was refused by him.

It is stipulated by the parties that Sub-class 50-3 was first set up by the department in May, 1934; that it became insolvent in October, 1934, and is still insolvent. The accident (reserve) fund is fully solvent.

The claimant appealed to the joint board from the departmental ruling, contending that the department's action was illegal and that she was entitled to the continued payment of her pension by warrants drawn upon the "accident (reserve) fund." After a hearing, the joint board made an order sustaining the department, and the claimant appealed to the superior court, which reversed the order of the joint board and entered a judgment directing that the claimant's annuity be left undisturbed in the accident reserve fund and that the department continue to pay her from that fund the monthly pension provided by law. The present appeal is from that judgment.

█ While the conclusion announced in the case of *Campbell v. Department of Labor & Industries, ante* p. 173, 97 P. (2d) 642, disposes of the present case adversely to the department's contention, the trial court based its judgment specifically on another ground, with which we are in agreement, namely, that the order of the department awarding the claimant a pension and setting up an accident reserve therefor was conclusively binding upon it under the rule announced in *Abraham v. Department of Labor & Industries,* 178 Wash. 160, 34 P. (2d) 457, and *Luton v. Department of Labor & Industries,* 183 Wash. 105, 48 P. (2d) 199.

Rem. Rev. Stat., § 7679, subd. (e), after providing for the creation, in the office of the state treasurer, of a reserve fund, out of which shall be made the payments specified in that section for all cases of death or permanent total disability, continues:

"For every case resulting in death or permanent total disability hereafter arising it shall be the duty of the department to make transfer on their books from the accident fund of the proper class to the reserve fund a sum of money for that case equal to the estimated present cash value of the monthly payments provided for it, to be calculated upon the basis of an annuity covering the payments in this section provided to be made for the case. Such annuities shall be based upon tables to be prepared for that purpose by the state insurance commissioner and by him furnished to the state treasurer, calculated upon standard mortality tables with an interest assumption of four (4) per cent per annum.

"The department shall notify the state treasurer from time to time of such transfers as a whole and the state treasurer shall invest the reserve in either state capitol building bonds issued to take up capitol building warrants now outstanding, or in the class of securities provided by law for the investment of the permanent school fund, and the interest or other earn-

ings of the reserve fund shall become a part of the reserve fund itself. The department shall, on October 1st of each year, apportion the interest or other earnings of the reserve fund as certified to it by the state treasurer, to the various class reserve funds according to the average class balance for the preceding year. As soon as possible after October 1st of each year, beginning in the year 1927, the state insurance commissioner shall expert the reserve fund of each class to ascertain its standing as of October 1st, of that year, and the relation of its outstanding annuities at their then value to the cash on hand or at interest belonging to that fund. He shall promptly report the result of his examination to the department and to the state treasurer in writing not later than December 31st, following. If the report shows that there was on said October 1st, in the reserve fund of any class in cash or at interest a greater sum than the then annuity value of the outstanding pension obligations of that class, the surplus shall be forthwith turned over to the accident fund of that class, but if the report shows the contrary condition of any class reserve, the deficiency shall be forthwith made good out of the accident fund of that class. The state treasurer shall keep accurate accounts of the reserve fund and the investment and earnings thereof, to the end that the total reserve funds shall at all times, as near as may be, be properly and fully invested, and to meet current demands for pension or lump sum payments may, if necessary, make temporary loans to the reserve fund out of the accident fund for that class, repaying same from the earnings of that reserve fund or from collections of its investments, or, if necessary, sales of the same."

It will thus be seen that the setting aside of the pension reserve is an integral part of the departmental judgment in the determination of a claimant's right to pension; there can be no pension award without a reserve.

In the *Abraham* case, *supra,* the widow of a deceased workman was awarded a pension of $42.50 a month

by the department, and a reserve fund, computed at $4,239.17, was set aside to provide therefor. After the monthly pension had been paid for over two years, the department ordered its further payment suspended, for the reason that, under the law as subsequently announced by this court, the widow's husband was not injured while in the employ of an employer coming under the act. Holding the department's action unwarranted, the court said:

"Assuming that, under the rule announced in the *Carsten* case [172 Wash. 51, 19 P. (2d) 133], the deceased workman was not injured while in the employ of an employer coming under the act and that the department might have so found, still we think that is now wholly immaterial and beside the point.

"Under the express terms of statutory law and in accord with its beneficial purposes, the department has original and exclusive jurisdiction, in all cases where claims are presented, to determine the mixed question of law and fact as to whether a compensable injury has occurred. It is as much its duty in each case to determine whether the workman was within the protection of the act at the time of the injury as it is to determine the fact of injury and extent thereof. The facts as to the nature of the employment are a vital part of each inquiry, and must necessarily be determined before a result can be reached allowing the claim.

"Since the department is the original and sole tribunal with power to so determine the facts, and its findings are reviewable only on appeal, it must follow that a judgment by it, resting upon a finding of fact that the workman was so employed at the time of injury as to be within the act, is final and conclusive upon the department and upon the claimant, unless set aside on an appeal authorized by the statute, or unless fraud, or something of like nature, which equity recognizes as sufficient to vacate a judgment, has intervened. Even in such cases, it would seem that the department would necessarily have to appeal to equity and give opportunity for a full inquiry before its judgment could be vacated."

In the case of *Luton v. Department of Labor & Industries, supra,* the court, after reaffirming the rule announced in the *Abraham* case, continues:

"The primary question for decision in the *Abraham* case was the same as the one now before us, and that late decision reflects the mature consideration and judgment of this court upon that question at this time. Unless fraud, or something of like nature which equity recognizes as sufficient to vacate a judgment, has intervened, the findings of the department, followed by a judgment resting thereon, become final and conclusive, reviewable only by appeal. A proper administration of the act requires no wider latitude of power than this. To extend the power of the department beyond that point would, we think, render its final decisions too vague and uncertain to afford any proper protection to the rights of claimants under the act."

We agree with the trial court that the rule announced in the cited cases is controlling here, and that the department is concluded by its order granting claimant's pension and setting up the reserve to secure its payment.

We are of the opinion, further, that there is no authority in the department, under the quoted provision of § 7679, to withdraw the capital sum of a reserve once established. It will be seen that the state treasurer is required to invest the reserve and certify its earnings to the department, and the department is to apportion the interest or other earnings of the fund to the various class reserve funds according to the average class balance for the preceding year. There is also a provision for "experting" the reserve fund of each class by the insurance commissioner to ascertain its standing as of October 1st of each year and the relation of its outstanding annuities, at their then value, "to the cash on hand or at interest belonging to that fund." If the commissioner's report shows that there was, on October 1st, in the reserve fund of

any class, in cash or at interest, a greater sum than the then annuity value of the outstanding pension obligations of that class, the surplus shall be forthwith turned over to the accident fund of that class. But if the report shows the contrary condition of any class reserve, the deficiency shall be forthwith made good out of the accident fund of that class.

It is thus seen that the capital reserve to insure payment of the pensions is to remain solvent and beyond the control of the department, save as to the authority given to credit earnings or surplus to the several classes.

Rem. Rev. Stat., § 7681 [P. C. § 3475], provides that, in case of death or permanent total disability, the monthly payment secured by the reserve may, on application of the beneficiary, be converted, in whole or in part, into a lump-sum payment, in any case not exceeding four thousand dollars,

". . . equal or proportionate as the case may be to the value of the annuity then remaining, to be fixed and certified by the state insurance commissioner, in which event the monthly payment shall cease in whole or in part accordingly or proportionately."

We conceive that, so far as a claimant's rights are concerned, there is, in principle, no difference between payment of a lump sum in cash and the setting aside in the reserve of its equivalent, for payment to the claimant in monthly installments. In the absence of fraud, the department's final action, in either case, is conclusively binding upon it.

In *State ex rel. Dunbar v. Olson*, 172 Wash. 424, 20 P. (2d) 850, it was held that the department could not, in the absence of fraud, recover from an injured workman an excessive award, saying:

"There is no allegation of fraud practiced on the part of Olson in the least degree inducing the depart-

ment to erroneously award to him the statutory lump sum of $1,080 for the 'loss of sight of one eye.' Nor is there any allegation that the department did not have ample means at hand to properly determine that question before it made that award."

The judgment of the trial court is affirmed.

BLAKE, C. J., MAIN, BEALS, and MILLARD, JJ., concur.

STEINERT, J. (dissenting)—For the reasons stated in the dissenting opinion in *Campbell v. Department of Labor & Industries, ante* p. 173, 97 P. (2d) 642, I am unable to concur with the majority, and therefore dissent.

SIMPSON, JEFFERS, and ROBINSON, JJ., concur with STEINERT, J.