## WATSON v. CURRIE.

Industrial Commission.

March 9, 1954.

Paschal C. Reese, West Palm Beach, for claimant.

James C. Paine of Earnest, Lewis, Smith & Jones, West Palm Beach, for employer.

JAMES R. KNOTT, Deputy Commissioner.

On April 16, 1953 the claimant Thomas Watson injured his foot and wrist in an accident arising out of and in the course of his work as a carpenter while engaged in repairing the roof of the residence of F. A. Currie, in West Palm Beach. As a result of the injury he was temporarily totally disabled until August 19, 1953, and incurred substantial medical and hospital expenses.

Watson claims the benefits of the workmen's compensation act against Currie in this proceeding, on account of his injury, and Currie controverts the claim, on the ground that claimant's employment was not subject to the Act.

Section 440.02, Florida Statutes 1953, provides as follows—

(1) The term "employment" includes employment by the state and all political subdivisions thereof and all public and quasi-public corporations therein and all private employments in which three or more employees are employed in the same business or establishment except officers elected at the polls, domestic servants in private homes, agricultural farm labor, professional athletes . . . .

(2) The term "employee" means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including

minors whether lawfully or unlawfully employed, but excluding independent contractors and excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer.

(3) The term "casual" as used in this section shall be taken to refer only to employments where the work contemplated is to be completed in not exceeding 10 working days, without regard to the number of men employed, and where the total labor cost of such work is less than $100.00.

(4) The term "employer" means the state and all political subdivisions thereof, all public and quasi-public corporations therein, every person carrying on any employment, and the legal representatives of a deceased person or the receiver or trustees of any person.

The evidence showed that Currie, an attorney by profession, hired the claimant and another carpenter named Bennett on April 14, 1953 to repair the roof of the Currie residence. A third man was employed as a painter to perform certain work on the residence, from about March 15 through April 18, 1953.

The two carpenters supplied their own tools. They were paid by the hour. Materials needed, such as shingles and nails, were specified by the carpenters and furnished by Currie. The latter told them to use any articles and materials available on the residence grounds, as needed, including ladders. There was no foreman on the job.

The total labor cost of the roofing work was more than $100. It was originally contemplated that the job would take about a week to complete, but it was not actually completed until April 28 after a total of 11 working days on the part of Bennett, who continued to work on the job after the claimant was injured.

The business relationship between the carpenters and Currie was such that the latter could have discharged them or they could have quit work at any time during the progress of the job, without liability on either side for discontinuing the relationship. Currie did not pay social security taxes on the men, nor deduct any withholding tax. As to Currie's authority to supervise the manner in which they performed their work, the claimant testified that if Currie had insisted on any certain manner of performing the work, he, the claimant, would have followed the orders given. However, perhaps somewhat inconsistently, claimant testified that he "guarantees" his work. Bennett, on the other hand, testified that he would not have allowed Currie to tell him how to perform his work, but would quit first. Bennett further testified that he intended to fix a leak in the Currie roof which had developed since the repair job, and that he might or might not accept additional pay for such work, thus implying that he also guaranteed the quality of his work.

Assuming, without deciding, that claimant was not an independent contractor, the primary question presented relates to whether the work in which claimant and the other two workmen were engaged constituted "employment" within the meaning and intent of the Act, which applies to "all private employments in which three or more employees are employed in the same business or establishment." Is the answer affected by the fact that such work was not being performed upon a business establishment, but upon the private residence of a householder, a professional man? Larson, in his treatise on Workmen's Compensation Law, section 50.21, discusses the question as follows—

> The purpose behind the various exemptions which have in common the non-business character of the employer's activity can best be approached by imagining a set of facts which could easily happen to any average householder. Let us suppose that you are a lawyer, owning a modest home, and living on a modest income, and that you have hired a neighbor boy to mow your lawn for seventy-five cents an hour. While the boy is attempting to adjust the bed of the power-mower with the blades turning, his screwdriver slips and both his hands are badly cut by the blades. Complications develop, and both hands are lost, making the boy totally and permanently disabled. Would you, as a lawyer—with, we will assume, a special consciousness of compensation law—expect to assume workmen's compensation liability in the circumstances, amounting to perhaps fifty thousand dollars? If not, what statutory provisions stand between you and this financial catastrophe?

> Exactly the same question arises whenever you get a leak in your roof fixed, or call in a practical nurse to stay with a sick child, or hire a guide on a fishing trip, or employ a mechanic friend to help you fix your car, or pay a handy-man to put up the storm windows.

> It would undoubtedly come as an unwelcome and violent shock to anyone, including those most keenly aware of the problem from the injured employee's point of view, if he should find himself subjected to compensation liability in any of these instances.

> The injured person is admittedly an employee who has suffered an accident in the course of his employment and who presents exactly the same social problem as the injured factory worker. The question is whether he is within the letter or the spirit of compensation legislation, and if not, why not.

> The courts have consistently held that compensation acts do not apply in such instances. The examples that can be drawn from decided cases cover a range as varied as the hypothetical cases just suggested: a carpenter helping to build the employer's own residence; a practical nurse called in to look after the employer's husband; a handy-man working on a country estate; a plasterer redecorating the employer's home; a carpenter building a chicken coop on the employer's residential premises; a caretaker looking after a summer home for the owner; a chauffeur repairing the owner's car; a repairman fixing a leak in the roof of the employer's house; * * *

Larson quotes from the opinion of the court denying coverage of a chicken house builder in Carsten v. Department of Labor and Industries (Wash.), 19 P. 2d 133, as follows—

> "It appears almost conclusively that the Legislature did not intend to bring within the act the odd job man, or the man employed on occasions by an ordinary householder to repair or improve his property. A contrary holding would lead to impossible results. The collection of premiums or assessments is a vital necessity which comes first. If every householder is liable for such premiums covering every odd job of an hour's duration, or even for a job covering several days' time of a workman in building a chicken house, a cheap garage, or other structure on his property, then the state-wide effort required to collect such premiums will be out of all proportion to the sums involved, and the result will be that the state will expend at least $2 for every dollar thus collected for the compensation fund. We see nothing in the statute law which calls for a construction leading inevitably to such an impractical, inefficient, and burdensome result."

In section 50.22 of the text mentioned the discussion is concluded as follows—"It appears then, that whatever the statutory background, the courts will not ordinarily find in the compensation act coverage of work undertaken by a person as, so to speak, a consumer instead of a producer."

It is evident from a review of the authorities that work of the nature being performed by claimant at the time of his injury is not to be considered as within the meaning and intent of the Act, and the claim is accordingly denied.