[No. 25151. *En Banc.* April 6, 1935.]

JOHN JANNAK, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 43 P. (2d) 34.

*The Attorney General* and *Browder Brown, Assistant,* for appellant.

*George W. Young,* and *H. E. T. Herman,* for respondent.

MILLARD, C. J.—The Spokane Ski Club is a domestic non-profit corporation. John Jannak, who was not a member of the club and had no connection with it other than as its paid employee, was employed by the club in general construction work for an agreed wage of three dollars a day. While actually engaged in the performance of his duties in connection with the work of construction of a building for the club, Jannak was injured.

The building upon which this workman was employed was two stories high, seventy-two feet long and twenty feet wide. It was divided into several rooms comprising one dormitory for men, and one dormitory for women, together with a kitchen, pantry, dining room and large main room. The building is permanent in its nature and was erected by the club for the convenience and comfort of its members. That building constituted one of the inducements offered by the club for members to retain their membership and to attract new members to the club. The members of the club paid a bunk fee of twenty-five cents a night for the privilege of using the building. Such fees were applied in payment of bunk furnishings for the building.

The court found:

"That the building so erected was upon one of the slopes of Mount Spokane, Spokane county, state of Washington. That during the erection of the building, members of the Spokane Ski Club volunteered labor

upon said building. That the plaintiff was employed to help in the construction of said building, and to supervise the erection of the building in accordance with blueprint plans. That plaintiff's contract for employment was to the effect that he would receive as payment for his services Three Dollars ($3.00) per day and expenses, and was to work Sundays when volunteer assistance was available, until such time as the walls and roof of the building were completed, and following the completion of the roofing of the building, plaintiff was to be steadily employed working upon the interior of the building until it was wholly completed. That at the time plaintiff was injured, he was working with a peavy upon a log that was being rolled into place."

Jannak filed with the department of labor and industries a claim for compensation. The department rejected the claim upon the theory that, at the time of the injuries, the claimant was not in the employ of an employer engaged in extrahazardous operations within the meaning of the workmen's compensation act. An appeal to the superior court from the joint board's order sustaining the department resulted in findings of fact in favor of the plaintiff and a judgment directing the department to entertain the claim and to award the claimant such compensation as might be proper under the compensation act. The department appealed.

Appellant insists that the case of *Carsten v. Department of Labor and Industries*, 172 Wash. 51, 19 P. (2d) 133, is controlling.

The facts, which are recited above, clearly bring this case within the rule enunciated in *Carsten v. Department of Labor and Industries, supra*. In the case cited, we held that a carpenter employed by an ordinary householder to make repairs or improvements on his property was not a workman engaged in extrahazardous employment, *because his employer was not engaged in such employment*. That is, as was pointed

out in the dissenting opinion, the rule announced by the majority excluded from the protection of the workmen's compensation act the person whose employment is purely casual and the person whose employment is not for the purpose of the employer's regular trade or regular business. While the writer disagrees with the rule that, to bring a workman within the operation of the statute, his employer must have been engaged in the building construction or other work for profit, or as a business or industry, he is bound thereby, in view of our refusal to modify that rule in *Dalmasso v. Department of Labor and Industries, ante* p. 294, 43 P. (2d) 32.

In *Carsten v. Department of Labor and Industries, supra,* in which the majority held that the householder was not an employer within the contemplation of the act because the householder was not engaged in the business of building, the carpenter was employed to assist the householder in the building of a chicken house, and during the course of the employment was injured. In that case, after referring to the case of *Edwards v. Department of Labor and Industries,* 146 Wash. 266, 262 Pac. 973, which held that a truck driver, employed by a wholesale merchant in making heavy deliveries to customers, was not engaged in extrahazardous employment because the employer was not engaged in the business of trucking, the majority said:

"If hauling one's own goods is not the business of transfer, drayage or hauling for hire, then it would seem that a householder who erects a chicken house on his home property is not, by reason of that act, engaged in the business of building."

If the householder employing a carpenter to assist in the construction of a chicken house was not an employer engaged in extrahazardous work within the contemplation of the workmen's compensation act because

the householder was not engaged in the business of chicken-house, or other building, construction, it logically follows that a ski club, a golf club, or a hunting club could not be said to be engaged in the business of building construction by reason of the fact that it erected a bunk house or a club house. The size of the building is a factor of no importance. The ski club, like the householder in the *Carsten* case, was not engaged in the business of building construction.

The author of this opinion, in the dissenting opinion in *Carsten v. Department of Labor and Industries,* *supra,* called attention, as follows, to the illogical position taken by the majority:

"I cannot agree that, as Lewis did not employ the appellant workman to build or repair as an incident to a gainful business or industry of the employer, the appellant was not within the protection of the statute. This court has never held that one employed otherwise than for the purpose of the employer's trade or business was not entitled to the benefit of the statute. In the absence of a provision expressly excluding such employees—no extravagant principle of inclusion is necessary to bring appellant within the operation of the compensation act—all persons engaged in the employment of any employer engaged in any extrahazardous work are workmen 'under this act.' Engaged in work means no more than occupied in doing that work or devoting attention and effort to that work. One can be so engaged temporarily, or that may be one's business. . . .

"The benefit of the appellant's labor in building the chicken house inured to the employer, the landowner. While not the regular trade or business of Lewis, yet during the time he was supervising and aiding in the construction of a building on his land, Lewis was engaged in, or occupied in doing, or devoting attention and effort to, extrahazardous work. If he supervised the construction of a mansion for himself and employed fifty workmen, it would hardly be contended that the statute did not apply. While the work would

be of longer duration, the employer would be engaged only temporarily in the business of extrahazardous work. The principle would be the same whether he built for himself, or for another, a castle or a shack, or whether he employed fifty men or only one man to perform the work. Whether he builded for another or for himself, when he employed persons to engage in that work and that work was extrahazardous, the employment was under the act.

"By statute and judicial interpretation, other jurisdictions have excluded from the protection of their workmen's compensation act the person whose employment is purely casual and the person whose employment is not for the purpose of the employer's regular trade or regular business. The language of the statutes of those states differs from the language of our statute, hence such authorities are not helpful.

"Our state was not concerned solely in the protection of those operating industries and businesses. The legislature emphatically declared that the compensation act was intended to include the industrial classes as a whole; that each wage worker, when injured in the course of extrahazardous employment, was entitled to the protection afforded by the act. The protective features of the act were not, as respondent contends, intended for only those wage workers who are employed in an industry or a business operated for profit.

" 'The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker.' Rem. Rev. Stat., § 7673.

"Websterian definitions lend support to the view that the language 'while engaged in any extrahazardous work' means that, to bring appellant within the operation of the statute, his employer must have been engaged in chicken-house and other building construction for profit, or as a business or industry.

"Such remedial legislation as the compensation act should be liberally interpreted—that spirit has in the past characterized this court's interpretations of the act, if interpretation were necessary. However, the statute is clear and needs no interpretation. We find no language in the statute expressly or impliedly excluding from the benefit of the act one who is employed

otherwise than for the purpose of the employer's regular trade or business.''

In *Dalmasso v. Department of Labor and Industries,* *ante* p. 294, 43 P. (2d) 32, the claimant, a painter by occupation, owned a lot upon which there was an eight-room house. A clause of the lease of that lot to a certain corporation provided that Dalmasso should remove the building from the lot. To make the removal, Dalmasso associated himself with four other men under an agreement that the building would be demolished, the material thereof sold, and the proceeds divided among the five men. On the sixth or seventh day, during the progress of the work, Dalmasso fell from the second floor to the first floor and sustained a serious injury. Dalmasso's claim for compensation was rejected by the department for the reason that the claimant was not an employer eligible to coverage under the act. The superior court entered a judgment affirming the department's order rejecting the claim. In affirming the judgment of the superior court, we said:

''Prior to the entering upon the demolition of the building, a permit was obtained therefor from the city of Seattle, and application for coverage under the workmen's compensation law was made, Dalmasso filling out the regular form of employer's report of extrahazardous payroll. . . .

''Rem. Rev. Stat., § 7675, which is one of the sections of the workmen's compensation act, provides that, except when otherwise expressly stated, 'employer means any person . . . engaged in this state in any extrahazardous work, . . .' and that workman means every person in this state 'who is engaged in the employment of any employer coming under this act. . . .'

''That the work of demolishing the house, which was in progress at the time the injury was sustained, was extrahazardous may be admitted. Dalmasso's busi-

ness or occupation was not that of wrecking houses. He was a painter by occupation, and engaged in that business as an employee and contractor from time to time. We see no distinction between this case and the case of *Carsten v. Department of Labor and Industries,* 172 Wash. 51, 19 P. (2d) 133 (with which the author of this opinion does not agree, but by which he is bound, in as much as the majority refuse to overrule same), where it was held that a carpenter employed by an ordinary householder to make repairs or improvements on his property was not a workman engaged in extrahazardous employment, because his employer was not engaged in such employment. In that case, in which the majority held that the householder was not an employer within the contemplation of the act, because he was not engaged in the business of building, the carpenter was employed to assist the householder in the building of a chicken house and during the course of the employment was injured. . . .

"If the householder employing a carpenter to assist in the construction of a chicken house was not an employer engaged in extrahazardous work within the contemplation of the workmen's compensation act, because he was not engaged in the business of building, it would seem to necessarily follow that Dalmasso could not be said to be engaged in the business of house wrecking by reason of the fact that he engaged therein in a single transaction. It is true that Dalmasso testified that subsequent to the time of making the lease upon the property he had not been very steadily employed, and was doing 'anything in hand that came along.' There is, however, no evidence from which it can be said that he was engaged in the business of house wrecking at any time. . . . Dalmasso, not being engaged in the business of house wrecking at the time he sustained the injury for which he sought compensation, was not covered by the workmen's compensation act."

Under the rule announced in *Carsten v. Department of Labor and Industries,* 172 Wash. 51, 19 P. (2d) 133, and followed in *Dalmasso v. Department of Labor and Industries, ante* p. 294, to bring respondent within the

operation of the workmen's compensation act, his employer (the ski club) must have been engaged in building construction for profit, or as a business or industry. Clearly, respondent's employer was not so engaged. It follows that the judgment must be reversed, and the action dismissed. It is so ordered.

MAIN, MITCHELL, and BLAKE, JJ., concur.

STEINERT, J. (concurring) — It appears to be definitely settled now that a workman, to come within the protection of the workmen's compensation act, must be in the employ of an employer who is engaged in extrahazardous work for profit, or as a business or industry. *Edwards v. Department of Labor and Industries,* 146 Wash. 266, 262 Pac. 973; *Thurston County Chapter, American National Red Cross v. Department of Labor and Industries,* 166 Wash. 488, 7 P. (2d) 577; *Carsten v. Department of Labor and Industries,* 172 Wash. 51, 19 P. (2d) 133; *Dalmasso v. Department of Labor and Industries, ante* p. 294, 43 P. (2d) 32. The opinion in this case affirms that rule, although the author of the opinion personally holds a contrary view. I am in full accord with the rule itself, and therefore concur in the opinion, except in so far as it expresses any doubt as to the propriety of the rule.

TOLMAN, J. (dissenting) — As the author of the opinion of the court in the case of *Carsten v. Department of Labor and Industries,* 172 Wash. 51, 19 P. (2d) 133, I am not only still of the view that there the law was properly construed and applied, but also I am firmly convinced that the rule there announced should not be deviated from.

To recover for injuries received in the course of his employment, a workman must not only be engaged in extrahazardous employment, but he must also be in the employ of an employer who comes under the act.

Section 7675, Rem. Rev. Stat. [P. C. § 3470], defines an employer in these words:

"Except when otherwise expressly stated, employer means any person, body or persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-hazardous work or who contracts with another to engage in extra-hazardous work."

The initial words, "except when otherwise expressly stated," require an examination of the entire act for the purpose of ascertaining if any exception has been expressly stated, and by such a search, we find that, in § 7676 (a), under Class 5, subdivision 5-10, an exception has been stated in these words:

"5-10 General construction (includes all operations by temporary employers in building construction) . . ."

We must give effect to this language as well as to that which precedes it, and it seems to me that its meaning is plain, obvious, and unmistakable. This language could only have been used for the purpose of bringing within the act all operations by temporary employers in building construction. There is left for our construction only the meaning of the words "building construction." Do these words mean the minor type such as building a shed or a chicken house, or are they intended to cover a substantial operation involving enough labor to make a practical application of the law possible? A reading of the *Carsten* case, *supra,* will make this point clear. It is impossible and impractical to apply the law to minor operations.

Here, however, we very clearly have such a building construction as the statute recognizes. The employer, a corporation (non-profit making, it is true, but that is wholly immaterial), was engaged in a major improvement of its property in order to further the pur-

poses for which it was organized. The building, a two-story structure, 20 x 72 feet, divided into dormitories, kitchen, dining room and a large reception room, was a complete club house designed to be used as such for the accommodation and comfort of members and guests. By no stretch of the imagination can such a building be called a minor improvement, the erecting of which would be no more than an odd job. The nature and extent of the work in and of itself clearly distinguishes this case from the *Carsten* case.

It is not for the courts to usurp the legislative power and attempt to draw an exact line between building construction, as the term is used in the statute, on the one side and odd jobs and minor improvements on the other. It would be simple, indeed, for the legislature by definite rules based on the amount of labor, the cost of the structure, the number of men employed, the total wages paid, or something of that nature, to establish the dividing line, for there must be a dividing line somewhere; but until the legislature so acts, it is not for us to lay down a definite rule. Under the law as it stands, it is our duty to apply the rule of reason to the facts presented in each individual case.

Applying that rule to the facts in this case, it seems self-evident that we have here building construction as covered by the statute, and therefore the judgment of the trial court is right, and should be affirmed.

BEALS and HOLCOMB, JJ., concur with TOLMAN, J.

GERAGHTY, J. (dissenting)—In *Dalmasso v. Department of Labor and Industries, ante* p. 294, 43 P. (2d) 32, recently decided adversely to the claimant, I felt the claimant was entitled to compensation. Jannak has a stronger case. Clearly, the Spokane Ski Club was an employer under the workmen's compensation act, and Jannak an employee and entitled to compensation for the serious injury he sustained.