[No. 28996. *En Banc.* September 9, 1943.]

CLAUDE E. CRAINE, *Respondent,* v. THE DEPARTMENT OF LABOR & INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *L. E. O'Neill, Assistant,* for appellant.

*Rosellini & Quinn,* for respondent.

BLAKE, J.—Plaintiff sustained injuries while working for C. H. Turner, who was building a dwelling house for him-self at 3512 McKinley avenue, Tacoma. Turner was not a building contractor nor engaged in construction work as

[1]Reported in 141 P. (2d) 129.

a business. Building construction was in no way connected with his regular occupation and business.

Plaintiff filed a claim for compensation with the department of labor and industries. The supervisor rejected the claim, and, upon plaintiff's appeal to the joint board, the latter sustained the action of the supervisor. From the decision of the joint board, plaintiff appealed to the superior court for Pierce county, which found that he was entitled to compensation. From a judgment remanding the matter to the department, with directions to determine and allow compensation, the department appeals.

In rejecting the claim, the department relied upon the authority of *Carsten v. Department of Labor & Industries,* 172 Wash. 51, 19 P. (2d) 133, wherein it was held that a carpenter employed by an ordinary householder to make repairs or improvements on his property is not a workman in contemplation of Rem. Rev. Stat., § 7675 [P. C. § 3470], defining "workman" as any person who is engaged in the employment of *"any employer coming under this act."* (Italics ours.)

In that and subsequent cases, we held that, in order to be an "employer coming under this act," one must be engaged, as a regular business, in the type of extrahazardous work involved. *Dalmasso v. Department of Labor & Industries,* 181 Wash. 294, 43 P. (2d) 32; *Jannak v. Department of Labor & Industries,* 181 Wash. 396, 43 P. (2d) 34.

If the rule laid down in those decisions is still effective, it is apparent that respondent was not a "workman" in contemplation of the act. He contends, however, that the rule has been abrogated by an amendment to the clauses of Rem. Rev. Stat., § 7675, defining employer. This amendment is contained in the Laws of 1939, chapter 41, p. 122, § 2 (Rem. Rev. Stat. (Sup.), § 7675). The decisions above mentioned construed the definition of employer as contained in the Laws of 1929, chapter 132, p. 326, § 1.

It is necessary to compare the definitions of employer as contained in these two acts in order to determine whether

the legislature has repudiated the construction placed by this court upon the definition in the 1929 act. That definition reads as follows:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-hazardous work *or who contracts with another to engage in extra-hazardous work.*" (Italics ours.)

The definition in the 1939 act is:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-hazardous work, by way of trade or business, *or who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen, in extra-hazardous work.*" (Italics ours.)

The italicized clause in the 1929 act was the portion of the definition upon which the claimants relied in the *Carsten, Dalmasso,* and *Jannak* cases. The italicized clause in the 1939 act is the portion of the definition upon which the respondent in this case relies. So, in order to make a closer comparison between the two definitions, we may break them down to read as follows: 1929, "Except when otherwise expressly stated, employer means any person . . . who contracts with *another to engage in extra-hazardous work*"; 1939, "Except when otherwise expressly stated, employer means any person . . . who contracts with *one or more workmen, the essence of which is the personal labor of such workman or workmen,* in extra-hazardous work."

It will be noted that the change wrought by the 1939 amendment consists in the omission of the words *"another to engage"* contained in the 1929 act, and, in their stead, substituting the words *"one or more workmen, the essence of which is the personal labor of such workman or workmen."*

Now, the question is whether this omission and sub-

stitution indicates a legislative intent to repudiate the rule of construction adopted by this court in the *Carsten, Dalmasso,* and *Jannak* cases. We are unable to perceive any such intent. The clauses under consideration appear in the disjunctive in both acts, so there is nothing in the way of grammatical structure in the later act which would call for a different construction from that placed on the earlier act.

Nor do we think there is any essential change of meaning in the definition of employer brought about by the omission of the words "another to engage" and the substitution of the words "one or more workmen, the essence of which is the personal labor of such workman or workmen." If anything, the clause in the 1929 act is more comprehensive than the clause in the 1939 act. See *Haller v. Department of Labor & Industries,* 13 Wn. (2d) 164, 124 P. (2d) 559. In any event, we do not think the omission and the substitution manifest any legislative intent to modify or abrogate the rule laid down in the *Carsten, Dalmasso,* and *Jannak* cases. On the contrary, we think the legislature has, in the 1939 amendment, expressly recognized and approved the rule laid down in those cases.

Reverting to the first clause of the 1939 amendment, defining employer, we find it qualified by the phrase "by way of trade or business." This is the very limitation placed by the decisions upon the definition of employer as contained in the 1929 act. In view of this qualification contained in the 1939 amendment and in view of the fact that the definition of employer as contained in the second clause of the 1929 act is in no sense broadened, we are convinced that the legislature had no intention of abrogating or modifying the rule of construction laid down in the *Carsten, Dalmasso,* and *Jannak* cases.

Respondent puts much reliance upon our recent decision in *Norman v. Department of Labor & Industries,* 10 Wn. (2d) 180, 116 P. (2d) 360. That decision was primarily concerned with the definition of "workman" as contained

in the Laws of 1937, chapter 211, p. 1030, § 2, which provides:

"The term workman within the contemplation of this act means every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his personal labor for any employer coming under this act whether by way of manual labor or otherwise in the course of his employment."

The question at issue in that case was whether an independent contractor came within the purview of the definition. The gist of the decision is contained in the following paragraph of the opinion, p. 184:

"We hold that it was the intention of the legislature to broaden the industrial insurance act, and bring under its protection independent contractors whose personal efforts constitute the main essential in accomplishing the objects of the employment, and this, regardless of who employed or contracted for the work."

And at another point in the opinion, p. 183, it was said:

"Prior to the effective date of the 1937 amendment, an independent contractor could not receive aid from the industrial insurance fund. Since that time, however, such person is entitled to receive compensation if the essence of the work he is performing is his personal labor."

However, after quoting the two amendments—1937, defining "workman," and 1939, defining "employer"—we said, p. 184:

"By the two amendments, it is clear that anyone, without regard for whom he is working, may come within the protection of the act if he is engaged in an extrahazardous occupation and if his personal labor is the essence of the work being performed."

Obviously, this language was unnecessary to a decision of the issue presented: whether an independent contractor was a "workman" in contemplation of the definition contained in the Laws of 1937, chapter 211, p. 1030, § 2. It, therefore, cannot be considered a conclusive interpretation

of the definition of "employer" as contained in the Laws of 1939, chapter 41, p. 122, § 2.

Judgment reversed.

SIMPSON, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.

STEINERT, J. (concurring)—I concur with the majority, but for reasons somewhat different from those expressed in the majority opinion.

As stated in *Thurston County Chapter, American Nat. Red Cross v. Department of Labor & Industries,* 166 Wash. 488, 7 P. (2d) 577, the workmen's compensation act repeatedly uses the word "industries," and the whole theory of that act is to the effect that it was intended to apply to a trade or business which is operated for profit or pecuniary gain. That concept and that interpretation of the act were later forcefully emphasized in the *Carsten, Dalmasso,* and *Jannak* cases, cited in the majority opinion.

Prior to 1937, the workmen's compensation act, in the section devoted to definitions of terms used in the act, defined the word "workman" as follows:

"Workman means every person in this state, who is engaged in the employment of any *employer coming under this act* whether by way of manual labor or otherwise, in the course of his employment." (Italics mine.) Rem. Rev. Stat., § 7675 [P. C. § 3470].

Subsequent to the decisions in the four cases cited above, the legislature in 1937 amended Rem. Rev. Stat., § 7674 [P. C. § 3469], relating to extrahazardous employment and now appearing as Rem. Rev. Stat. (Sup.), § 7674-1 [P. C. § 3469d], by adding a section defining the term "workman" as follows:

"The term workman within the contemplation of this act means every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his personal labor for any *employer coming under this act* whether by way of manual labor or otherwise in the course of his employment." (Italics mine.)   Laws of 1937, chapter 211, § 2, p. 1030.

Before the enactment of the 1937 amendment, it was well settled in this state that an *independent contractor* was not entitled to the benefits of the workmen's compensation act. *Haller v. Department of Labor & Industries,* 13 Wn. (2d) 164, 124 P. (2d) 559, and cases therein cited. The 1937 amendment therefore brought within the protection of the workmen's compensation act, in addition to those workmen theretofore included therein, independent contractors whose contracts call for extrahazardous work and whose own personal labor is the essence of their contracts.

In this connection, it is noteworthy that in 1939 the legislature passed an act (Laws of 1939, chapter 41, p. 119) amending both § 7674 of Rem. Rev. Stat. (as amended by Laws of 1937, chapter 211, § 1), relating to extrahazardous employment, and § 7675, Rem. Rev. Stat., which is the section devoted to definitions, both of which numbered sections are referred to above. In the act of 1939, the term "workman" is defined in the identical language as that used in the workmen's compensation act *prior* to the 1937 amendment, namely:

"Workman means every person in this state, who is engaged in the employment of any *employer coming under this act* whether by way of manual labor or otherwise, in the course of his employment." (Italics mine.) Laws of 1939, chapter 41, § 2, p. 123.

I again call attention to the fact that, throughout these various sections of the workmen's compensation act devoted exclusively to definitions of terms therein used, a "workman" is defined as one who is engaged in the employment of an *employer coming under the act.* I stress this fact because it has been definitely established in this state that what an "employee" *does* is not of itself determinative of his status as a workman under the compensation act, but rather is his status determined primarily by the business or industry of his *employer.* In *Thompson v. Department of Labor & Industries,* 194 Wash. 396, 78 P. (2d) 170, the governing principle in such cases is stated as follows:

"The primary test is whether or not the *employer* comes within the provisions of the act, that is to say, whether he is engaged in extrahazardous business or industry. . . . It is the business or industry of the *employer,* rather than the activities of the *employee,* that determines whether or not the employee is within the provisions of the act. [Citing cases.]" (Italics mine.)

Now, the difficulty presented in the instant case arises from the fact that, prior to the recent act of 1939, referred to above, the existing workmen's compensation act defined the term *"employer"* as follows:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, *all while engaged in this state in any extra-hazardous work or who contracts with another to engage in extra-hazardous work."* (Italics mine.)

whereas the 1939 act substituted for the language above italicized the following:

" . . . all while engaged in this state in any extra-hazardous work, by way of trade or business, or who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen, in extra-hazardous work."

It must be conceded, I think, that the 1939 legislature had some purpose in mind in changing the phraseology and arrangement of words defining the term "employer," and at first blush it might seem that the intention was to broaden the scope of the term "employer" so as to include not only one who is engaged in extrahazardous work as a trade or business, but also one who merely *contracts* with a workman to do personal extrahazardous work, including even a householder who has some casual work done upon his premises, provided always that the work is of an extra-hazardous character as defined and classified in the general workmen's compensation act.

When, however, we consider the spirit and fundamental purpose of industrial insurance provided for in the workmen's compensation act, as disclosed by the original act of

1911 and the various amendments thereto, together with the repeated statements by this court recognizing and enunciating that spirit and purpose, and when we further consider the machinery set up for the proper administration of the act, it is apparent, I think, that the legislature did not intend so radical a departure from the original purpose of the act as a superficial interpretation of the amendatory act of 1939 might at first seem to imply. The title to the late act contains nothing which in itself would suggest such an intent, and, while the body of the act amends the former definition of the term "employer," the same act preserves the fundamental idea and purpose of industrial insurance and defines a "workman" as one engaged in the employment of any employer coming under the act.

Bearing in mind the fact, as already stated above, that in 1937 the legislature amended the definition of the word "workman" so as to bring certain *independent contractors* within the protection of the compensation act, and noting the further fact that, although that amended definition of "workman" is retained in Rem. Rev. Stat. (Sup.), § 7674-1, for the benefit of such independent contractors, the 1939 act itself adopts the original definition of the term as applied to workmen generally, I am of the opinion that the intention of the 1939 legislature in amending the definition of the term "employer" was simply to so harmonize the definition of "employer" with the definition of "workman" as defined in the 1937 act, that the protection provided for certain independent contractors in the 1937 act would clearly be preserved in the 1939 act. This court has virtually so held in *Haller v. Department of Labor & Industries, supra,* wherein, after analyzing these very amendments contained in the 1937 and the 1939 laws, respectively, this language is used:

"Manifestly, the legislature intended, by the enactment of the two amendments, to extend industrial insurance protection to some, but not all, independent contractors whose contracts call for the performance of extrahazardous work."

It seems to me that, if the definition of "employer" as contained in the 1939 act was intended by the legislature to extend the application and scope of the whole act so as to include *all* extrahazardous work, regardless of whether or not that work was carried on as a business or trade, the numerous expressions, in Rem. Rev. Stat., § 7675, at least, which restrict the application of the act to trade or business, would have been deleted. It would have been entirely unnecessary, as well as confusing, to retain in the act terms and expressions having to do only with trades or businesses.

In the very first case involving the workmen's compensation act (*State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466), wherein this new type of legislation was exhaustively argued and considered, this court recognized that the law applied only to trades, businesses, or industries. For over thirty years that has been the law. We should therefore be very reluctant to overturn such a long standing legislative policy by extending the application of the act so as to introduce an extreme departure from its original aim or scope, especially when the sole reason for doing so is a phrase added to a definition, and there is another reasonable interpretation that can be placed upon that phrase harmonizing it with the fundamental purpose and spirit of the law.

I am the more persuaded to adopt this conclusion for the reason that, if the legislature had intended to broaden the scope of the term "employer" so as to include others than those engaged in extrahazardous work as a trade or industry, it would have made reasonable and workable provisions for the collection of premiums and assessments from such newly created employers. It would not have left the matter in such situation as would lead to the impossible results pointed out in the *Carsten* case, *supra.*

For the reasons as herein attempted to be set forth, I think the judgment of the trial court should be reversed.

GRADY, J. (dissenting)—I am unable to agree with the majority opinion in the interpretation and application of § 2

of chapter 41 of the Laws of 1939, p. 121 (Rem. Rev. Stat. (Sup.), § 7675), to the situation presented by the record in this case.

The respondent, who made claim for compensation under the workmen's compensation act, was employed by C. H. Turner to do work in the construction of a dwelling house, and, while doing so, was injured. Turner was not engaged in building construction work by way of trade or business, but the class of work he employed the respondent to do was extrahazardous, as defined by the act, and its essence was the personal labor of respondent.

I think it is quite plain from a reading of the original act of 1911, chapter 74, p. 345, that the legislature contemplated that, to be a beneficiary thereunder, a workman must have been in the service of an employer who was engaged in having extrahazardous work done, as defined by the act, as an occupation or business, and that, if one were employed by a person situated as was Mr. Turner in this case to work in the construction of his dwelling house, he would not be entitled to compensation if he were injured while so doing because of the then definition of who was an employer, § 2, p. 347:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra hazardous work."

A workman was defined, same section and page:

"Workman means every person in this state, who, after September 30, 1911, is engaged in the employment of an employer carrying on or conducting any of the industries scheduled or classified in section 4, whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer: . . ."

When one considers the nature and scope of the act, together with these definitions, and those it contemplated should bear the greater portion of the burden of the cost of accidents and who were required to contribute to the acci-

dent fund therein provided, it seems clear that the employer class was limited to those who were engaged in some kind of trade or business classed as extrahazardous, and excluded one who might have gone outside of his regular trade or business and employed another to do work for him. even though such work were of a character defined to be extrahazardous. The reason for this noninclusion was, no doubt, because of administrative difficulties in knowing all who might employ workmen and ascertaining the amount of their contributions and collecting them, as well as the practical difficulty every person would face, when he wanted to have work done for himself, in determining, at his peril, whether or not he came under the act.

The legislature, at its session in 1921, by § 2, chapter 182, p. 721, amended the section containing the foregoing definition of employer to read as follows:

". . . except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extrahazardous work *or who contracts with another to engage in extra-hazardous work.*" (Italics mine.)

The legislature thereby added to the former law the italicized words.

In view of the evident purpose of the act, one pauses to wonder why these words were added unless it were to broaden the act and include as an employer one situated as is Mr. Turner in this case. That seems to be the plain import of the words added.

By § 1 of chapter 132 of the Laws of 1929, p. 325, the section containing the definitions of employer and workman was again amended, but no change was made in the definition of employer. Such changes as were made with reference to the definition of workman are immaterial.

In 1933, this court, by a division of five to four, decided the *Carsten* case. The majority stressed the administrative and other difficulties to be encountered if Carsten's employer were to be regarded as one of the employer class defined

by statute, and did not discuss or give any effect to the words "or who contracts with another to engage in extra-hazardous work." It thus was able to, and did, arrive at the conclusion that a workman, to come under the act, must be employed by one who is engaged in an industry classified as extrahazardous. This case was followed by the *Dalmasso* and *Jannak* cases, decided in April, 1935.

By § 2 of chapter 41 of the Laws of 1939, p. 122, the legislature further amended the same section of the original act as amended by the acts of 1921 and 1929, as follows:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-hazardous work, by way of trade or business, or who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen, in extra-hazardous work."

It will be seen that the industrial idea so apparent in the act of 1911, when considering who should be classed as an employer, was intensified by the new words "by way of trade or business," and the part of the statute not given effect in the *Carsten* case was reenacted and added to by the following: "or who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen, in extra-hazardous work."

The majority say, however, if I read the opinion correctly, that, as this language is substantially the same in meaning as that not given effect in the *Carsten* case, it must be assumed that the legislature, in reenacting it by the 1939 act, had in mind the construction given it in the *Carsten* case. If the statute before the court in the *Carsten* case could have been considered as having more than one meaning or if it were ambiguous and the legislative intent had to be determined, then such construction of it should have been given by the court as would have made it harmonize with the general purpose of the whole act. But the words added to the original enactment were not ambiguous nor did they give the statute more than one meaning. The

court did not attempt to ascribe any meaning to those words, but gave them no effect and applied the statute without regard to them.

With this situation before the legislature, it seems strange indeed that it would deliberately reenact the definition of employer and not only intensify the industrial idea in the first part of the definition, but also, instead of stopping there and thereby approving the rule of the *Carsten* case, continue and reenact the words, with further amplification, which had been in the acts of 1921 and 1929. It seems to me that the legislature, by this enactment, in place of indicating an approval of the *Carsten* case and the others following it, very clearly indicated that its intention was to define two classes of employers whose employees are protected by the industrial insurance act: (1) one who is engaged in any extrahazardous work by way of trade or business, and (2) one who contracts with workmen to do personal, extrahazardous work.

I recognize the administrative and other difficulties confronting the department of labor and industries and those who may employ others to work for them in extrahazardous work, as defined by statute, if this two-fold aspect of the definition of employer is the law. But this is not a judicial problem—it is a legislative one, and, if the legislature has seen fit to broaden the scope of the employer class beyond that contemplated by the original act of 1911, it is within its province to do so, and it is not for us, by construction, to make the statute read what we might think it should or to follow cases so doing and which have been met by a reenactment of the same statute. I am a firm adherent to the rule of *stare decisis* and believe this court should as a rule follow its former decisions wherever applicable, particularly those in which statutes have been construed, to the end that our case law be stable and constant; but, when the legislature, acting within its province, declares a rule of law, former decisions to the contrary must yield. The judgment should be affirmed.

MILLARD and MALLERY, JJ., concur with GRADY, J.