[No. 30387.   Department Two.   March 15, 1948.]

THOMAS H. PITTS, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*Walthew & Gershon* and *Charles F. Warner,* for appellant.

*The Attorney General* and *Jane Dowdle, Assistant,* for respondent.

JEFFERS, J.—Thomas H. Pitts, claimant herein, was, on or about June 16, 1945, employed by Cooperative Association Naval Supply Depot, at pier No. 91, Seattle, Washington, as a janitor in the cafeteria annex operated by the Co-operative.   On December 9, 1945, Mr. Pitts, as a part of his duties, was on a ladder, washing windows, when he, in some manner, caught his foot on one of the rungs of the ladder and fell to the pavement, lighting on his right hip. He was thereafter hospitalized for about nine or ten days. Claimant stated that as a result of his fall his right leg is weak, and if he walks very much it "plays out"; that before his fall he did not have a hernia, but that one has developed since, as a result of his fall.

[1]Reported in 191 P. (2d) 295.

Claimant seasonably filed his claim with the department of labor and industries, and thereafter his claim was denied by the supervisor, for the reason that it was "not under the industrial insurance act." On a rehearing before the joint board, the action of the supervisor was sustained.

It may be here stated that the only testimony taken before the joint board was that of claimant and Mrs. S. A. Burks, manager of the Cooperative.

An appeal was taken from the order of the joint board to the superior court for King county, which court affirmed the action of the joint board.

Claimant has appealed to this court, and states that the trial court erred (1) in holding that the employer was a co-operative association under the laws of the state of Washington; (2) in holding that the employer was not an employer within the contemplation of the workmen's compensation act; (3) in holding that the employer was not engaged in a business or industry; (4) in holding that the employer in this case did not operate for a profit; and (5) in entering findings of fact, conclusions of law, and judgment adverse to appellant.

The question to be determined in this case is whether or not the Cooperative is an employer under the workmen's compensation act, as the term employer is defined by Rem. Rev. Stat. (Sup.), § 7675 [P.P.C. § 709-1].

The theory of the trial court and its reasons for the decision are, we think, shown by conclusions of law Nos. 1 and 2, which we quote:

"(1) That a workman to come within the protection of the workmen's compensation act must be in the employ of an employer who is engaged in extrahazardous work *for profit* or as a *business or industry*; that inasmuch as the employer in this case, Cooperative Association Naval Supply Depot, is a nonprofit organization and is not a business that is operated for profit or pecuniary gain, it therefore is not a business that comes under the workmen's compensation act and the department of labor and industries was correct in holding that the plaintiff was not covered by and is not entitled to receive compensation under the workmen's compensation act of this state.

"(2) That the workmen's compensation act now in force in this state does not extend its coverage to a nonprofit cooperative association." (Italics ours.)

It will be noticed that while in the first part of conclusion No. 1 the trial court stated that a workman, to come within the protection of the act, must be in the employ of an employer *who is engaged in extrahazardous work for profit or as a business or industry,* the court then concludes that the Cooperative is not an employer under the act because it is not a business operated for profit or pecuniary gain.

There is no question in this case, as will hereinafter appear, but that the Cooperative was engaged in the business of operating a cafeteria, and it is admitted by respondent that the Cooperative was engaged in an extrahazardous undertaking. Respondent argues, however, that there is still the question of whether or not the association is "a trade or business within the act." Respondent further argues that the "trade or business" referred to in Rem. Rev. Stat. (Sup.), § 7675, has been construed by this court to mean trade or business engaged in for the sake of profit, and to sustain its contention respondent cites *Thurston County Chapter, American Nat. Red Cross v. Department of Labor & Industries,* 166 Wash. 488, 491, 7 P. (2d) 577; *Carsten v. Department of Labor & Industries,* 172 Wash. 51, 19 P. (2d) 133; and *Craine v. Department of Labor & Industries,* 19 Wn. (2d) 75, 80, 141 P. (2d) 129. We shall later refer to those cases.

Appellant contends that, under the section last above referred to and our decisions, an employer is within the act if he meets one of the following qualifications, to wit: (1) He must be engaged in a business for profit; or (2) he must be engaged in a business within the commonly accepted definition of the word "business"; or (3) he must be engaged in an industry within the commonly accepted usage of such word.

To sustain his contention, appellant refers to the same cases cited by respondent, and others referred to in the cited cases.

Appellant's contentions are apparently based largely upon the following statement found in the case of *Jannak v. Department of Labor & Industries*, 181 Wash. 396, 403, 43 P. (2d) 34:

"To bring respondent [the workman] within the operation of the workmen's compensation act, his employer (the ski club) must have been engaged in *building construction for profit, or* as a business or industry." (Italics ours.)

We shall later again refer to that case.

Respondent contends that, in order to bring an employer within the act, it is not sufficient merely to show that he is engaged in business or industry, but it must appear that such business or industry is being conducted or operated for profit or pecuniary gain. Respondent argues that, in the instant case, it does not appear that the cafeteria was so conducted or operated, or that the Cooperative was formed as a profit-making venture.

Having in mind the contentions of the respective parties, let us examine the cases. The first case cited by respondent is *Thurston County Chapter, American Nat. Red Cross v. Department of Labor & Industries, supra.* In that case, we were dealing with a charitable organization. The statute under consideration was Rem. 1927 Supp., § 7675, which provided in part:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extrahazardous work or who contracts with another to engage in extrahazardous work."

This particular definition was not changed by the 1929 amendment to the section, and was carried forward as Rem. Rev. Stat., § 7675. In 1939, however, the legislature amended the section, in so far as the definition of employer was concerned, to read as follows:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-haz-

ardous work, by way of trade or business, or who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen, in extra-hazardous work." Rem. Rev. Stat. (Sup.), § 7675.

After quoting Rem. Supp. 1927, §§ 7675 and 7712, we stated:

"The workmen's compensation act repeatedly mentions [in sections other than § 7675] 'industries' which in the ordinary sense are conducted or operated for profit or pecuniary gain, but all extrahazardous industries are not within the act. . . .

"A benevolent or charitable organization, *such as the Red Cross*, which is not operated for profit or pecuniary gain, is not liable for the torts committed by its agents or servants against a patron of the institution, in the absence of a showing that it failed to exercise reasonable care in the selection of such agent or servant. . . . The courts of last resort of Massachusetts and New York have held that a charitable or benevolent organization, which is not operated for profit or pecuniary gain, is not within the provisions of the workmen's compensation act of those respective states. [Citing authority.] . . .

"The workmen's compensation act of this state [Washington] makes no mention of benevolent or charitable organizations and the whole theory of the act is to the effect *that it applies to a trade or business which is operated for profit or pecuniary gain.* In the act, the word 'industries' is repeatedly used, and this would indicate that the act was intended to apply to a *trade or business*. . . .

"We are of the opinion that it was not the legislative intent that charitable organizations, *such as the Red Cross*, engaged in work as above stated, should be within the operation of the act." (Italics ours.)

The next case referred to by respondent is *Carsten v. Department of Labor & Industries*, 172 Wash. 51, 19 P. (2d) 133. In that case, one Lewis employed the appellant, Carsten, a carpenter by occupation, to assist him in building a chicken house upon his (Lewis') property. In the course of his work, Carsten suffered an injury which resulted in a disability. He made a claim for compensation to the department of labor and industries, which claim was rejected. Successive claims to the joint board and to the superior

court were unsuccessful, and he appealed to this court. The question presented was whether or not the appellant, while so employed, was a workman within the meaning of the workmen's compensation act. After quoting the definition of employer and workman, as stated in Laws of 1929, chapter 132, § 1, p. 325 (Rem. Rev. Stat., § 7675), we said:

"Since, in order to collect premiums and create the fund from which an injured workman may be compensated, employers must be identified and classified, and since the statute in plain terms designates only those employers who are engaged in extrahazardous work and provides that the employee in order to be a workman within the act, must be an employee of such an employer, it appears almost conclusively that the legislature did not intend to bring within the act *the odd-job man, or the man employed on occasions by an ordinary householder to repair or improve his property.* . . .

"We therefore hold that the service performed by the workman does not in and of itself bring him under the act, but it must be a service performed for an employer who comes under the act." (Italics ours.)

The opinion refers to and quotes from *Edwards v. Department of Labor & Industries,* 146 Wash. 266, 262 Pac. 973. The opinion in the *Edwards* case states:

"The sole question presented is this: Is a truck driver, employed by a wholesale merchant to operate a large truck, such as is commonly used for heavy hauling, maintained by such employer as a part of its business for the delivery to customers of heavy cartons and cases of commodities, engaged in an extrahazardous occupation, within the meaning of the workmen's compensation act?"

Then after referring to several of our cases, the opinion contains the following statement, quoted in the *Carsten* case:

" 'As a matter of common knowledge, many concerns in the state are engaged in the regular business of transfer, drayage and hauling for the general public for hire. Those are manifestly the "classes of business" or "industries" which the legislature had in mind, in enacting the statutes before quoted. L. Marks & Company was not engaged in any business of transfer, drayage and hauling for hire, but was engaged only in hauling its own goods and chattels.

Neither was it engaged in an industry, such as warehousing, an incidental part of which was transfer, drayage and hauling, or team and truck driving.' "

The opinion in the *Carsten* case, after setting out the above quotation, states:

"If hauling one's own goods is not the *business* of transfer, drayage or hauling for hire, then it would seem that a householder who erects a chicken house on his home property is not, by reason of that act, engaged in the *business* of building." (Italics ours.)

The opinion then refers to the case of *Thurston County Chapter, American Nat. Red Cross v. Department of Labor & Industries, supra,* stating:

"The still more recent case of *Thurston County Chapter, American Red Cross v. Department of Labor & Industries,* 166 Wash. 488, 7 P. (2d) 577, is even more decisive. It is there said, in effect, again and again, that the compensation act *is limited to those industries which are conducted for profit or gain and those employers who are engaged in such industries for profit or gain.*" (Italics ours.)

The opinion continues:

"While a householder may, indirectly, receive profit or gain from the erection of a chicken house on his premises, he cannot, under the facts of this case, be said to be engaged in the erection of chicken houses for profit within the meaning of the statute, even though it be given the most liberal interpretation."

Respondent here, of course, cites the *Carsten* case because of the reference therein to the above italicized statement made relative to the *Thurston County Red Cross* case.

We shall next discuss the case of *Dalmasso v. Department of Labor & Industries,* 181 Wash. 294, 43 P. (2d) 32. In that case, Dalmasso owned a lot in Seattle, upon which a large dwelling was located. He leased the lot to an investment company, and under the lease agreed to remove the building from the premises. For this purpose he associated himself with four other men. After the work had proceeded for several days, Dalmasso was injured. He filed a claim with the department of labor and industries, which claim was finally rejected by the department, for the rea-

son that Dalmasso was not an employer eligible to coverage under the act. The claimant appealed from the order of the joint board to the superior court, which affirmed the order of the joint board in rejecting the claim. We affirmed the judgment of the trial court. The opinion states:

"That the work of demolishing the house, which was in progress at the time the injury was sustained, was extrahazardous, may be admitted. Dalmasso's *business or occupation* was not that of wrecking houses. He was a painter by occupation, and engaged in that business as an employee and contractor from time to time.

"We see no distinction between this case and the case of *Carsten v. Department of Labor & Industries*, 172 Wash. 51, 19 P. (2d) 133 (with which the author of this opinion does not agree, but by which he is bound, in as much as the majority refuse to overrule same), where it was held that a carpenter employed by an ordinary householder to make repairs or improvements on his property was not a workman engaged in extrahazardous employment, because his employer was not engaged in such employment. In that case, in which the majority held that the householder was not an employer within the contemplation of the act, because he was not engaged in the *business of building,* the carpenter was employed to assist the householder in the building of a chicken house and during the course of the employment was injured. . . .

"If the householder employing a carpenter to assist in the construction of a chicken house was not an employer engaged in extrahazardous work within the contemplation of the workmen's compensation act, *because he was not engaged in the business of building,* it would seem to necessarily follow that Dalmasso could not be said to be *engaged in the business of house wrecking by reason of the fact that he engaged therein in a single transaction.*" (Italics ours.)

It will be noticed that, in the last-cited case, the opinion is not based upon the fact of whether or not the venture was conducted and operated for profit, but squarely upon the fact that Dalmasso was not engaged in house wrecking as a business. It will also be noticed that the opinion states that the basis of the decision in the *Carsten* case was that the householder was not engaged in the *business* of building.

We shall next discuss the case of *Jannak v. Department of Labor & Industries, supra,* 181 Wash. 396, 43 P. (2d) 34.

The opinion in that case, which was written by the same judge who wrote the opinion in the *Dalmasso* case, *supra*, states:

"The Spokane Ski Club is a domestic non-profit corporation. John Jannak, who was not a member of the club and had no connection with it other than as its paid employee, was employed by the club in general construction work for an agreed wage of three dollars a day. While actually engaged in the performance of his duties in connection with the work of construction of a building for the club, Jannak was injured. . . .

"The building is permanent in its nature and was erected by the club for the convenience and comfort of its members. That building constituted one of the inducements offered by the club for members to retain their membership and to attract new members to the club. The members of the club paid a bunk fee of twenty-five cents a night for the privilege of using the building. Such fees were applied in payment of bunk furnishings for the building."

Jannak filed with the department a claim for compensation. The department rejected the claim upon the theory that, at the time of the injuries, the claimant was not in the employ of an employer engaged in extrahazardous operations, within the meaning of the workmen's compensation act. An appeal to the superior court from the joint board's order sustaining the department resulted in findings of fact in favor of the plaintiff, and a judgment directing the department to entertain the claim and to award the claimant such compensation as might be proper under the compensation act. The department appealed. The opinion states:

"The facts, which are recited above, clearly bring this case within the rule enunciated in *Carsten v. Department of Labor & Industries, supra.*"

Then, after stating at length what the *Carsten* case holds, the opinion continues:

"If the householder employing a carpenter to assist in the construction of a chicken house was not an employer engaged in extrahazardous work within the contemplation of the workmen's compensation act because the householder was not engaged in the *business* of chicken-house, or other building, construction, it logically follows that a

ski club, a golf club, or a hunting club could not be said to be engaged in the *business* of building construction by reason of the fact that it erected a bunk house or a club house. . . . The ski club, like the householder in the *Carsten* case, was not engaged in the *business* of building construction." (Italics ours.)

The opinion then refers to and quotes at length from the *Dalmasso* case, *supra*, after which it states:

"Under the rule announced in *Carsten v. Department of Labor and Industries*, 172 Wash. 51, 19 P. (2d) 133, and followed in *Dalmasso v. Department of Labor and Industries, ante* p. 294, to bring respondent within the operation of the workmen's compensation act, his employer (the ski club) must have been engaged in *building construction for profit, or as a business or industry.* Clearly, respondent's employer was not so engaged." (Italics ours.)

In view of the statements made in the *Jannak* opinion as to the reasons for the decisions in the *Carsten* and *Dalmasso* cases, namely, that, in the *Carsten* case, the employer was not within the act because the householder was not engaged in the *business* of building, and in the *Dalmasso* case because Dalmasso was not engaged in the *business* of house wrecking, and in view of the further statement in the opinion that if the householder in the *Carsten* case was not engaged in the business of chicken-house, or other building, construction,

" . . . it logically follows that a ski club, a golf club, or a hunting club could not be said to be engaged in the business of building construction by reason of the fact that it erected a bunk house or a club house,"

it is difficult to see how it could be said that, under the rule announced in the *Carsten* case and followed in the *Dalmasso* case, in order to bring Jannak within the operation of the workmen's compensation act, his employer (the ski club) must have been engaged in *building construction for profit.* Certainly the writer of the opinion in the *Jannak* case, as is apparent from the statements above set out, was of the opinion that the decision in neither the *Carsten* case nor the *Dalmasso* case was based upon any rule that the opera-

tion being conducted in each case was not being carried on for profit or pecuniary gain.

In fact, we are of the opinion that the only case among those hereinbefore discussed, in which it could be said that the decision was in some measure based upon the statement that the workmen's compensation act "applies to a trade or business which is operated for profit or pecuniary gain" is *Thurston County, American Nat. Red Cross v. Department of Labor & Industries, supra.* The quoted statement was made in considering whether or not the Red Cross, a purely charitable organization, was an employer under the act. It seems to us that what was said in that case could have application only to organizations similar to the Red Cross, for we stated therein:

"Had the legislature intended to bring within its provisions *charitable organizations* which were not liable for torts of its agents and servants except for failure to exercise reasonable care in their selection, it undoubtedly would have said so in plain terms; or from the language used it would be necessarily implied. We are of the opinion that it was not the legislative intent that charitable organizations, such as the Red Cross, engaged in work as above stated, should be within the operation of the act." (Italics ours.)

We are further convinced that a careful reading of the *Carsten, Dalmasso, Edwards,* and *Jannak* cases, hereinbefore discussed, will show that the decision in each of them was based, not upon the fact that the operation under consideration was not being engaged in for profit, but upon the plain and unequivocal statement that the operation was not being conducted or carried on as a *business.*

We are further confirmed in this view by what was stated in *Craine v. Department of Labor & Industries,* 19 Wn. (2d) 75, 141 P. (2d) 129, wherein Craine sustained injuries while working for one Turner, who was building a dwelling house for himself. Turner was not a building contractor, nor was he engaged in construction work as a *business.* That case was decided after the 1939 amendment of Rem. Rev. Stat., § 7675, which changed the definition of employer to read

as found in Rem. Rev. Stat. (Sup.), § 7675, above quoted. The opinion refers to the *Carsten* case as follows:

"In rejecting the claim, the department relied upon the authority of *Carsten v. Department of Labor & Industries,* 172 Wash. 51, 19 P. (2d) 133, wherein it was held that a carpenter employed by an ordinary householder to make repairs or improvements on his property is not a workman in contemplation of Rem. Rev. Stat., § 7675 [P.C. § 3470], defining 'workman' as any person who is engaged in the employment of *'any employer coming under this act.'* (Italics ours.)

"In that and subsequent cases, we held that, in order to be an 'employer coming under this act,' *one must be engaged, as a regular business, in the type of extrahazardous work involved. Dalmasso v. Department of Labor & Industries,* 181 Wash. 294, 43 P. (2d) 32; *Jannak v. Department of Labor & Industries,* 181 Wash. 396, 43 P. (2d) 34.

"If the rule laid down in those decisions is still effective, it is apparent that respondent was not a 'workman' in contemplation of the act." (Italics ours.)

The opinion, after discussing the definition of employer as contained in Laws of 1929, chapter 132, § 1, p. 326 (Rem. Rev. Stat., § 7675), and the statute as amended by Laws of 1939, chapter 41, § 2, p. 122 (Rem. Rev. Stat. (Sup.), § 7675), stated:

"In any event, we do not think the omission and the substitution [in the 1939 amendment] manifest any legislative intent to modify or abrogate the rule laid down in the *Carsten, Dalmasso,* and *Jannak* cases. On the contrary, we think the legislature has, in the 1939 amendment, expressly recognized and approved the rule laid down in those cases."

█ Having in mind the plain and unambiguous language of Rem. Rev. Stat. (Sup.), § 7675, above quoted, and the decisions hereinbefore discussed, it is our opinion that all that is necessary to be shown, to bring an employer under the act, is that such employer be engaged, as a *regular business or trade,* in the type of extrahazardous work involved.

Let us now examine the testimony introduced in the instant case before the joint board. It is admitted by re-

spondent that the Cooperative was engaged in an extra-hazardous undertaking in the operation of a cafeteria. It is also admitted by respondent that merely because an employer has never paid any industrial insurance premiums, a workman will not be denied his rights under the act. The only testimony introduced before the joint board, and, therefore, the only testimony to sustain the respective contentions of the parties, was that of Mrs. S. A. Burks and appellant. We quote from Mrs. Burks' testimony:

"Q. What is your occupation? A. Manager, Naval Supply Depot Cooperative Association. . . . Q. Mrs. Burks, you are a civilian? A. Yes sir. Q. And who is the manager of this cooperative association? A. I am the manager under a civilian board of directors under the direction of the supply officer in command. . . . Q. Who is he? A. Captain Smellow, I don't know his first name. MR. CUMMINS: He is the regular U. S. navy? THE WITNESS: Yes, sir. [Perhaps it should be stated here that Mrs. Burks was called by appellant.] Q. Is the cooperative association run by the navy or by the civilian board? A. It is run by the civilian board under the supervision of the navy. Q. And what happens to the money that is made? A. It is converted back into the cooperative association. Q. That is a cooperative association? A. Yes sir. Q. And the profits go back into the cooperative association? A. Yes sir. Q. Who are the members of the cooperative association? A. Everyone who works on the station automatically becomes a member of the association. . . . Q. In other words, anybody, any civilian that goes to work there automatically becomes a member of the association? A. That is correct. Q. And any civilian that goes on the station eats there that wants to? A. Yes sir. Q. And it is a public restaurant? . . . A. Yes sir. Q. How many civilians eat there in the course of a day? A. I serve about 950 a day. Q. How many eating there — MR. CUMMINS: December 9, 1945. (continuing) December 9, 1945? A. Approximately 4000. Q. Mostly civilians? A. Yes sir. Q. And Mrs. Burks, the association does not have franking privileges through the mail do they? A. No sir. Q. And the association buys the food? A. Yes sir. Q. And the association hires the employees? A. Yes sir. Q. And are the employees paid by civilian check or government check? A. They are paid by Cooperative check. Q. Civilian check? A. Yes sir."

While Mrs. Burks, in her direct examination, stated that the cafeteria was a public restaurant, in her cross-examination she modified that by stating that any civilian employed by the United States navy at pier No. 91 automatically became a member of the association and was entitled to eat at the cafeteria, but that the association did not feed the general public. Mrs. Burks also stated that the cafeteria had small stores within the same building, where they sold tobacco, miscellaneous items, toothpaste, shaving cream, safety shoes, work socks, raincoats, and other such merchandise.

It is admitted that the association tendered to the department industrial insurance premiums, in an attempt to bring itself under the act, but that such premiums were refused and returned. It does not appear from the record before us upon what basis or theory the department refused to accept such premiums, other than that the cafeteria was not an employer under the act. However, the department here contends, and the decision of the trial court is based upon that theory, that the Cooperative is not an employer because it is not conducting or operating the cafeteria for profit or pecuniary gain.

We are unable to agree that this is a proper basis for determining whether or not the Cooperative is an employer under the act. We are of the opinion that it appears from the record, without contradiction, that the Cooperative was engaged in extrahazardous work, namely, operating a cafeteria, as a regular business, and that, because of such operation, it became an employer under the plain terms of the statute.

However, assuming for the purpose of argument, that the *Thurston County Red Cross* case, *supra,* did announce a general rule to the effect that an employer, to come within the meaning of the act, not only must be engaged in extrahazardous work as a trade or business, but also that he must be operating such trade or business for profit or pecuniary gain, we are still of the opinion that there was no evidence in this case which would warrant the conclusion that the Cooperative here involved was not being operated for

profit or pecuniary gain. While the testimony introduced before an examiner for the joint board is sketchy, if it shows anything relative to the profit feature, it shows, in our opinion, that the Cooperative was being operated and conducted for profit.

For the reasons herein assigned, the judgment of the trial court is reversed, and the case remanded with directions to refer the matter back to the department, with an order directing the department to entertain appellant's claim, and to accord to him such compensation as he shall be entitled to under the workmen's compensation act.

MALLERY, C. J., BEALS, STEINERT, and SIMPSON, JJ., concur.