[No. 10691.  Department One.  May 14, 1913.]

EARL AUGERSON, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

APPEAL—REVIEW—RIGHT TO ALLEGE ERROR—RESPONDENTS. In the absence of a cross-appeal by respondent, a decision against him, sustaining a challenge to the sufficiency of the evidence upon one of his causes of action, becomes the law of the case, and cannot be reviewed on appeal.

STREET RAILROADS—NEGLIGENCE—REMOVAL OF AUTOMOBILE FROM TRACK—EVIDENCE—SUFFICIENCY. The evidence is insufficient to show negligence of a street car company in removing a disabled automobile from its tracks, by pulling it out with a street car hitched to the rear springs of the automobile, where the agent of the owner in possession of the automobile suggested and consented to that method and desired it speedily removed, and there was nothing to show any safer or more practicable method of removal.

[1]Reported in 132 Pac. 222.

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 20, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by the driver of an automobile, and damages to the machine, by reason of an excavation in a street. Reversed.

*James B. Howe* and *H. S. Elliott*, for appellant.

*S. A. Keenan*, for respondent.

CROW, C. J.—The Seattle Electric Company, a corporation, owns and operates a double track cable car line on Yesler street, in the city of Seattle. In October, 1911, a deep excavation had been made in the street under the car tracks for the purpose of constructing improvements. The cars were operated upon the tracks, which were supported by heavy timbers. About midnight on October 31, 1911, the plaintiff, Earl Augerson, drove an automobile down Yesler street on a heavy grade, and ran into the excavation. After being ditched, the automobile rested at an angle of 45 degrees, with one front wheel pinioned under one of the timbers, while its rear wheels extended above the tracks and obstructed the street cars. The automobile was taken from the excavation by defendant's servants in the manner hereinafter stated. The automobile then belonged to one F. J. McCurdy, who, on December 6, 1911, sold it to plaintiff, and assigned to plaintiff his claim for damages against the Seattle Electric Company. Thereupon plaintiff, who was a minor, commenced this action by his guardian *ad litem*, against the Seattle Electric Company, to recover damages for personal injuries sustained by himself, and also to recover damages for injuries to the automobile. The trial judge, as a matter of law, held plaintiff guilty of contributory negligence at the time he drove the automobile into the excavation, but submitted the case to a jury upon the issue whether defendant was afterwards guilty of negligence in removing the automobile from the excava-

tion, and further injured the machine to plaintiff's damage. Upon this issue the jury returned a verdict for $225 in plaintiff's favor. Both parties interposed a separate motion for judgment notwithstanding the verdict. All motions were denied, and judgment was entered upon the verdict. The defendant only has appealed.

The only question presented is whether the trial judge erred in denying appellant's motion for judgment notwithstanding the verdict. As the plaintiff has not appealed, that portion of the order of the trial court in part sustaining appellant's challenge to the sufficiency of the evidence on the ground that respondent was guilty of contributory negligence has become the law of the case and cannot be reviewed. In *Winningham v. Philbrick*, 56 Wash. 38, 105 Pac. 144, this court said:

"Respondent, however, has not appealed, and it has long since become the established rule in this court that we will not review any order or ruling made by the court below unless the appeal is presented by the party aggrieved. If, therefore, respondent desired this court to review the ruling of the court below upon the questions submitted in his brief and upon which the ruling below was adverse to him, he should have taken a cross-appeal, failing which the rulings thereon of the court below become the law of this case, and we are precluded from reviewing them."

The trial judge instructed the jury that the only questions before them were whether the automobile was further damaged by taking it out of the excavation, and if so, whether such damage resulted from appellant's negligence. On this record we are compelled to approach the consideration of this appeal assuming that appellant was guilty of no negligence before the automobile went into the excavation, and that it can only be held liable, if at all, for such damages or injuries as may have been inflicted thereafter upon the automobile as the proximate result of its negligence. Taking this view of the case, we find no evidence sufficient to support a finding of negligence on appellant's part. Immediately

after the accident, respondent went to the police station, in the immediate neighborhood, where he endeavored to telephone for an equipment to remove the automobile, but failed to get the parties whom he sought. An unsuccessful attempt was first made to raise the automobile by using a small jack. Thereafter, it was suggested by some one present that a rope be attached to the automobile and to one of appellant's street cars, so that the car might pull the automobile from the excavation. This plan was adopted, the rope was attached, and the street car, on the second or third trial, succeeded in pulling the automobile from the excavation. During most, if not all, of this time, respondent was present and made no objections to the plan adopted, further than to protest that appellant's servants should not attach the rope to the differential on the automobile. He suggested that it be attached to the rear springs, which was done. Respondent, being in possession of the machine, was the agent of the owner, and had at least some right to direct and control the conduct of those who were assisting in the removal. That appellant's servants and respondent acted upon this theory is shown by their conduct as disclosed by the evidence. Relative to the plan adopted, respondent, in part, testified as follows:

"Q. Didn't take any part in it at all? A. Only to refuse to let them hitch their cable to my differential. Q. How is that? A. I refused to let them hitch their cable to my differential on the car. Q. And they hitched it somewhere else, then? A. They slid it to the rear spring, yes, sir."

One Westedt, a police officer and a disinterested witness who was present, gave the following testimony which stands undisputed:

"Q. Now, if I understand you correctly, you made the proposition to this young man that the cable car would pull him out? A. Yes, sir, he asked my advice what I thought was the best way to get him out of there. Q. And he agreed to that, did he? A. Yes, sir, he agreed to it, in fact he superintended the job when putting the hook on the axle, and told them not to do it and put it on the spring, which they did."

Appellant's servants proceeded with the work of removal in respondent's presence, and without further objection or protest from him. There is evidence that a front wheel of the automobile was fastened by heavy timbers under the car tracks, which at first prevented the automobile from responding to the attempts to remove it, and there is further evidence tending to show that when the automobile did finally come out of the ditch, its front portions were pulled apart. It is conceded that considerable injury was done to the machine when it first went into the ditch, and such injuries were observed before any attempt at removal was made. There is no showing that, with the exercise of due care, the automobile could have been removed without further damage, nor has any safer or more practicable method of removal been suggested. The position of the automobile impeded traffic upon the car line, and appellant was obliged to remove it as soon as possible in order that traffic might be resumed. Respondent also desired that it should be removed as speedily as possible. Appellant owed respondent no duty further than to observe due care, and we conclude that the evidence is not sufficient to show that it failed to exercise due care, or that it did not adopt the best method of removal. Respondent had as much to do with the method selected as did appellant. There is no competent evidence to show negligence on appellant's part.

The judgment is reversed, and the cause is remanded with instructions to dismiss.

Mount, Chadwick, and Parker, JJ., concur.