[No. 31606. Department Two. March 13, 1952.]

WILLARD LATIMER, *Appellant,* v. WESTERN MACHINERY
EXCHANGE, *Respondent.*[1]

[1]Reported in 241 P. (2d) 923.

*James M. Stewart* and *Donn F. Lawwill,* for appellant.

*L. B. Donley,* for respondent.

HILL, J.—In an action for personal injuries, we find our-selves primarily concerned with the validity of the defense that the injured man had no cause of action because he was

engaged in an extrahazardous occupation and was or could have been under the protection of the Washington work-men's compensation act, and that the defendant, even if a tort-feasor, was an employer under that act, with all premiums paid. This defense is based upon what is called the immunity provision of the workmen's compensation act. Rem. Rev. Stat. (Sup.), § 7675 [P.P.C. § 709-1], gives to the workman who is under the act and who is injured by the negligence or wrong of another not in the same employ, the right to elect whether to take under the act or to seek a remedy against the person whose negligence or wrong caused his injury, with the proviso

" . . . That no action may be brought against any em-ployer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act. . . . "

Factually, the circumstances are that Willard Latimer, Elmer M. Johnson and Lloyd Pratt had discussed the pos-sibility of conducting a logging operation. Pursuant to their discussions, they located some timber owned by a Mr. Turk, who agreed to sell to them on a stumpage basis; and for at least two or three days prior to May 11, 1948, per-haps longer, they were engaged in felling and bucking up trees to clear a site for a donkey engine and around a spar tree. While there is some question as to the status of Pratt while this work was being done, it is undisputed that Lati-mer and Johnson had a business relationship of some kind and expected to be compensated for their labor from the profits of the logging operation.

May 11, 1948, the three of them, together with Latimer's father and Arvid Berg, went to the place of business of the Western Machinery Exchange, hereinafter called "Wes-tern," and there purchased a donkey engine, Johnson mak-ing the down payment of two hundred dollars. With the aid of Western's men and equipment, the donkey engine was loaded onto Johnson's truck and trailer for transportation to the site cleared for it. During the process of getting it

ready for transportation, Latimer was severely injured by what is referred to as a "straddle chain," which fell from a hook attached to a traveling crane. The accident occurred on the premises of Western and the crane and chain were part of its equipment, but there is no certainty as to who placed the chain on the hook from which it became dislodged.

Alleging that negligence by Western was a proximate cause of his injuries, Latimer commenced this action.

The defense was three-fold: (1) no primary negligence; (2) contributory negligence; (3) plaintiff had no right of action against the defendant because the plaintiff could have been under the workmen's compensation act if he had so desired, and the defendant was under that act and had paid all premiums due thereunder. The trial court rejected the third defense and submitted the case to the jury on the issues of negligence and contributory negligence. After a verdict for the plaintiff for thirty-five hundred dollars, the trial court granted a motion for judgment notwithstanding the verdict and entered a judgment of dismissal. It appears from the memorandum decision that the judgment n.o.v. was granted because no negligence by the defendant had been established. The plaintiff appeals from the order granting judgment n.o.v. and the resultant dismissal.

We are of the opinion that, on the issues of negligence and contributory negligence, there was sufficient evidence to go to the jury, but we will not discuss those issues because we are convinced that, even if there was negligence by Western's employees, the plaintiff, appellant here, was not entitled to maintain the action.

■ It is admitted that the respondent was an employer in the course of extrahazardous work under the act at the time of appellant's injury; that respondent was covered by the workmen's compensation act, was a contributor to funds established thereunder, and was not in default. It is likewise conceded that it is the law that when a workman is or could be entitled to benefits under the workmen's compensation act for an injury sustained by him, he has no cause

of action against an employer for negligence causing that injury if that employer was in the course of extrahazardous employment under the act at the time of the injury. *Koreski v. Seattle Hardware Co.*, 17 Wn. (2d) 421, 135 P. (2d) 860. The reasons one who is not but could be eligible to receive benefits under the workmen's compensation act cannot maintain an action against an employer who is covered by the act, are well stated in the *Koreski* case and will not be repeated here.

The question here presented is whether the status of the appellant was such that, if he had so desired, he could have qualified for benefits under the workmen's compensation act.

The definition of a "workman" under that act is as follows:

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment. . . ." Rem. Rev. Stat. (Sup.), § 7675.

It is our opinion that appellant does not come directly within that definition, but that he does come within the definition of an "employer," which is as follows:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all [1] while engaged in this state in any extra-hazardous work, by way of trade or business, or [2] who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen, in extra-hazardous work." Rem. Rev. Stat. (Sup.), § 7675.

The act provides that under certain conditions individual employers, as workmen, may receive benefits thereunder:

"Any individual employer or any member or officer of any corporate employer who shall be carried upon the payroll at a salary or wage not less than the average salary or wage named in such payroll and who shall be injured, shall be entitled to the benefit of this act as and under the same circumstances, and subject to the same obligations, as a workman: *Provided,* That no such employer or the bene-

ficiaries or dependents of such employer shall be entitled to benefits under this act unless the director of labor and industries prior to the date of the injury has received notice in writing of the fact that such employer is being carried upon the payroll prior to the date of the injury as the result of which claims for a compensation are made." Rem. Rev. Stat. (Sup.), § 7675.

Hence, if the appellant is to be deprived of his right of action against the respondent, it must be on the hypotheses, first, that he was an individual employer; and, second, that he was such an individual employer as could have qualified for the benefits of the act as a workman.

Appellant attacks the first hypothesis on two grounds, contending: (1) To be an employer under the act one must have employees, and the appellant and his associates had no employees; and (2) to be an employer under the act one must be engaged in extrahazardous work "by way of trade or business," and appellant and his associates were not engaged in loading and transporting machinery by way of trade or business, and, further, had not yet commenced logging as a trade or business.

It is our view that, so far as the first ground of attack is concerned, appellant does not correctly interpret the law. With reference to the second, while we agree with his statement of the law, we do not agree with his application of the law to the facts of this particular case.

■ *Answer to appellant's first attack on Hypothesis 1.* Our conclusion that an individual employer under the workmen's compensation act need not have any employees is based upon the definition of "employer" as above set forth. That definition is in two parts; under "[1]" there is no suggestion that it is necessary to have employees to be an employer within the purview of the act. This is made quite clear by a comparison of definitions of "employer" in the statutes of other states.

The Oklahoma and New York statutes use practically identical wording, and say that an employer is one who is "employing workmen in hazardous employments." 64 McKinney Laws of N. Y., Art. I, § 2; see, also, Okla. Stat.,

Perm. ed. (Supp.), Title 85, § 3. In many states the definition of "employer" includes the element of having a person or persons in service. Thus, in California, "employer" means "Every person . . . which has any natural person in service." Deering's Calif. Codes, Labor, § 3300. In Connecticut and Indiana, to be an employer one must be "using the services of another for pay." Conn. Gen. Stat. (1951 Supp.), § 1308b; 8 Burns Ind. Stat., § 40-1701. In Michigan and Montana, to qualify as an employer, one must have a "person in service" under a "contract of hire, express or implied, oral or written." 12 Mich. Stat. (1950 Rev.), § 17.145; 6 Mont. Rev. Code, § 92.410. And in Oregon, an employer under the workmen's compensation act is one "who shall contract for and secure the right to direct and control the services of any person." 7 Ore. Comp. Laws, § 102-1703.

The phrases quoted above are not included in the definition of "employer" in the Washington statute, and that omission of an element appearing in one form or another in practically every other workmen's compensation statute evidences an intent in this state to bring everyone engaged in any extrahazardous work by way of trade or business within the employer classification.

The intent of the act to extend its protection to others than employees is apparent from the provision that individual employers, including partners and members of a joint venture (*Johnson v. Department of Labor and Industries,* 33 Wn. (2d) 399, 205 P. (2d) 896 (1949)), and members and officers of corporations may receive benefits as workmen if they comply with the requirements of the act to accomplish that result.

While the concept of an employer without employees is unusual, the reason for it is apparent. Anyone who is engaged in extrahazardous work by way of trade or business either has employees or is self-employed; somebody has to do the work, and whoever does the work is liable to be injured. Such a holding is in accord with the statement in the original act, repeated with each amendment of the sec-

tion in which it first appeared, *i.e.*, that industry should bear the greater portion of the burden of the cost of its accidents. Rem. Supp. 1947, § 7676a.

Appellant urges that the department of labor and industries has placed a different construction on the statute and has refused to recognize self-employed individuals as employers under the act unless they had at least one employee. The briefs in *Dalmasso v. Department of Labor & Industries,* 181 Wash. 294, 43 P. (2d) 32 (1935), reveal that the department there urged such a construction on the court. If we had approved the department's interpretation of the law to that effect, the *Dalmasso* case would have been easy of determination; instead, it was decided on another issue. Although this court was not of a unanimous opinion on the decisive issue, it did, by inference, indicate unanimous disagreement with the department's contention that a self-employed person must have an employee before he can be classified as an employer and be covered under the act, and we find nothing since then giving approval to such a construction of the law. An erroneous construction of the statute by the department, even though long continued, is not controlling. *Zappala v. Industrial Ins. Comm.,* 82 Wash. 314, 144 Pac. 54 (1914); *Long v. Thompson,* 177 Wash. 296, 31 P. (2d) 908 (1934); *Samarzich v. Aetna Life Ins. Co.,* 180 Wash. 379, 40 P. (2d) 129 (1935); *State ex rel. Washington Motor Coach Co. v. Kelly,* 192 Wash. 394, 74 P. (2d) 16 (1937).

It is to be noted that the construction which we place upon the statute can involve no element of surprise claims against the funds administered by the department, as no individual employer can receive benefits under the act without prior notice in writing to the department that he is claiming coverage as a workman, and without the payment of premiums on the man-hours he works.

*Answer to appellant's second attack on Hypothesis 1.* Appellant next urges that while loading and transporting a donkey engine he was not engaged in extrahazardous work "by way of trade or business," and hence was not an em-

ployer within the purview of the act. Supporting this position, he cites *Edwards v. Department of Labor & Industries,* 146 Wash. 266, 262 Pac. 973 (1928); *Carsten v. Department of Labor & Industries,* 172 Wash. 51, 19 P. (2d) 133 (1933); *Dalmasso v. Department of Labor & Industries, supra; Johnson v. Department of Labor & Industries,* 182 Wash. 351, 47 P. (2d) 6 (1935); *Craine v. Department of Labor & Industries,* 19 Wn. (2d) 75, 141 P. (2d) 129 (1943); *Pitts v. Department of Labor & Industries,* 30 Wn. (2d) 129, 191 P. (2d) 295 (1948). As was pointed out in the case last cited, each of the first three of the cited cases was decided on the basis that, although the employee claiming benefits under the act had been injured while engaged in extrahazardous work, his employer was not engaged in extrahazardous work by way of trade or business but only incidentally or casually, and, hence, was not entitled to coverage under the then definition of "employer"; consequently, the injured employee was not within the protection of the act. This was also true of the fourth case cited. The fifth case was decided after the 1939 amendment of the definition of "employer" (Rem. Rev. Stat. (Sup.), § 7675), which is the present definition, and the rationale of the holding is the same as in the earlier cases. The last cited case states the same rule and varies from the others only in that we there concluded that the employer was engaged in the extrahazardous work in question by way of trade and business and was an employer under the act; hence its injured employee was entitled to benefits thereunder.

If the appellant in the present case had not been engaged in extrahazardous employment by way of trade or business when he undertook to help load and transport the donkey engine, the above cases would be applicable, as the loading and transporting of machinery was not his trade or business. However, he, with his associates, was engaged in the logging business, not casually or incidentally, but by way of trade or business, prior to May 11, 1948, the date of the injury. Logging is undisputably an extrahazardous employment. The work done prior to the time the appellant

was injured, while preparatory in character, was essential to the operation. It seems to us that the acquisition, loading and transporting of the donkey engine was likewise an essential part of the logging operation. The fact that a transport company could have been hired to load and haul it does not mean that that loading and hauling was not part of the logging operation. *Bennett v. State Industrial Accident Comm.*, 113 Ore. 627, 233 Pac. 537.

■ Appellant also points out that no actual partnership agreement had been entered into on May 11, 1948 (the exact date of the partnership agreement is not clear, but it was not later than May 15th, as an employer's unemployment compensation report was filed by the partnership on that date); that Lloyd Pratt did not become a member of the partnership; and that O. N. Latimer and Arvid Berg, who had no part in the clearing, falling and bucking up, did become members of the partnership; that no logs were hauled until May 19th; that no agreement was signed by Mr. Turk and the partners for the timber to be used in the operation until May 20th; and that no notice was given to the department of labor and industries that they were beginning the operation until May 21st.

The fact remains that the logging operation began as a trade or business when they began cutting and clearing. The exact relationship between appellant and his associates had not crystallized, but they were not clearing land, cutting trees and bucking them up for exercise, but with the expectation of profit. If they had had an employee and he had been injured by the first tree felled, they would not be heard to say that they had not commenced their logging operation.

*Answer to appellant's attack on Hypothsis 2.* Appellant also vigorously attacks the second hypothesis upon which respondent's immunity to suit is based, *i.e.*, that appellant, as an individual employer, could have qualified as a workman for benefits under the workmen's compensation act. Appellant says that, even if he was an individual employer, he could not have qualified as a workman because he could

not "be carried upon the payroll at a salary or wage not less than the average salary or wage named in such payroll," (Rem. Rev. Stat. (Sup.), § 7675) as there was no payroll and there was no average salary or wage.

■ We would point out that the provision of the statute relative to "a salary or wage not less than the average salary or wage" is an anachronism. Contributions to the accident fund were once based upon a percentage of the payroll, but that has not been true since 1933. Except for statistical purposes, payroll figures as they relate to wages and salaries are meaningless, in so far as the operation of the workmen's compensation act is concerned; the important thing is man-hours, and all contributions to the various funds are based upon payments for each man-hour worked. This is recognized by the department's regulation as set forth in exhibit No. 7, which makes no reference to being carried on the payroll and is as follows:

"Inclusion of employer's hours is optional; however, if any employer wishes coverage, it will be necessary that he notify the Department in writing in advance of the date that the coverage is to become effective. A minimum of 160 hours per month must be reported in the main classification by all employers obtaining coverage. After coverage is effective the employer is liable for premiums on the above basis until the Department is notified in writing of the employer's intention to exclude himself."

The department is interested in knowing in advance the date from which the employer is to be covered, and that premiums will be paid on the man-hours he works on and after that date.

In the *Dalmasso* case, heretofore discussed, it appeared that there could be no payroll in the generally accepted sense of the term, as the men engaged in the employment involved were to be compensated by dividing the proceeds of the sale of the materials made available by their work. There is no suggestion in any of the numerous opinions written in that case, that the fact that they were to be paid in that way was a factor which could prevent their being covered under the act and receiving benefits as workmen.

That in order to qualify under the act an individual "shall be carried upon the payroll" or estimated payroll means no more than that a statement or estimate of his earnings shall be furnished, whether they be wages, salary, or profits, actual or anticipated.

 Nor was it anticipated that coverage under the act would be dependent upon a pre-existing operation. When appellant started his logging operation, Rem. Supp. 1947, § 7676c, was applicable. It reads in part as follows:

"Every employer who shall enter into any business or commence any operation subject to industrial insurance classification, shall, before so commencing notify the Director of Labor and Industries of such fact, accompanying such notification with an estimate of his payroll and workmen hours for the first calendar month of his proposed operations, and shall make payment of the premium on such estimate with adjustments to be subsequently made. . . ."

. It is our view that under this statute appellant and his associates, being employers even though they had no employees, should have notified the director of labor and industries before they commenced their logging operation, which was clearly "subject to industrial insurance classification." If they did not care to be under the protection of the act, they could have reported that they were a partnership or joint venture with no payroll and no workmen's hours, and hence liable for no premiums, and by the same token they would have been entitled to no protection under the act. If they elected to take the benefits as workmen, they should have notified the director to that effect, reporting that they had no payroll in the usual sense in which that term is used, as they were to be compensated by future profits, but furnishing an estimate, along with an estimate of the number of workman hours for each man for the first month of the operation, and paying the premiums on the latter estimate (provided that the workman hours for each would have numbered at least 160 a month, as required by the department's regulation; for present purposes, we assume but do not pass upon the propriety of such a regulation). By so doing, they would have done everything that

the act contemplates or the department requires to entitle employers to receive benefits as workmen, except to comply with the alleged requirement of the department that an employer must have employees, or at least an employee, before he can become eligible to receive benefits under the act. If such is a requirement of the department, there is no statutory basis for it.

■ We again emphasize that the individual operator in extrahazardous industry as a trade or business, with or without employees, does not have to qualify himself to receive benefits under the act unless he desires to do so; but, since he can come under the act if he so desires, he cannot maintain an action against a workman or employer who was in the course of extrahazardous employment under the act for any injury he sustained while in the course of work, if he could have received benefits for such injury under the workmen's compensation act had he qualified himself so to do.

This conclusion calls for an affirmance of the judgment of the trial court unless there is merit in appellant's contention that the trial court ruled that the action was not barred, and that, there being no cross-appeal, the ruling of the lower court now stands as the law of the case on that point. Appellant cites in support of this contention *Winningham v. Philbrick*, 56 Wash. 38, 105 Pac. 144; *Augerson v. Seattle Electric Co.*, 73 Wash. 529, 132 Pac. 222; *Bulette v. Bremerton*, 34 Wn. (2d) 834, 210 P. (2d) 408; *Gelling v. Golden Arrow Farms*, 39 Wn. (2d) 87, 234 P. (2d) 539.

■ We fail to see how the respondent could have cross-appealed, as he was not aggrieved by any appealable order or judgment entered in the case. But, since the *Winningham, Augerson* and *Bulette* cases are repeatedly cited to us in support of the proposition for which they are here cited, it would seem that time and space should be taken to demonstrate that they do not support that proposition.

It must be borne in mind that the trial court granted the respondent the relief it requested, a judgment n.o.v., for the reason, as explained in its memorandum decision, that there was no credible evidence from which the jury could

have found the respondent guilty of negligence. Respondent urges in support of the judgment—and we believe properly—his defense that the action is barred by what has been referred to as the immunity provision of Rem. Rev. Stat. (Sup.), § 7675. This supports the judgment of dismissal.

Before proceeding with the analysis of appellant's argument on this point, we would call attention to the fact that after the present case was argued we said, by a supplementary opinion in *Gelling v. Golden Arrow Farms,* 39 Wn. (2d) 87, 234 P. (2d) 539, that the language in that case relied upon by the appellant was to be disregarded.

In neither the *Winningham, Augerson* nor *Bulette* case was the contention this court refused to consider one which would have upheld the judgment from which the appeal was taken. In the *Winningham* case, the appeal was from an order of the trial judge granting the defendant a new trial in an action for slander of title (the defendant having stated that the plaintiff had infringed upon the defendant's patent), after a trial on the merits and a verdict of the jury rendered in favor of the plaintiff. The respondent contended, *inter alia,* that the case could properly be heard only in the Federal courts, and, further, that the communication upon which the action was based was privileged, so that the plaintiff was not entitled to recover. It is quite apparent that neither of these contentions was in support of the order for a new trial from which the appeal was taken. The respondent was actually seeking, without a cross-appeal, to secure a change in the judgment appealed from by way of dismissal of the action, either on the merits or for lack of jurisdiction.

Some of the language of the *Augerson* case may be misleading unless the status of the litigation at the time of the appeal is made clear. The defendant operated a double-track cable car line on Yesler way in Seattle. A deep excavation was made in the street under the car tracks, and the plaintiff ran his automobile into the excavation. The automobile was removed by employees of the defendant and was further damaged in the course of the removal. The

trial court ruled that the plaintiff was guilty of contributory negligence and could not recover for the damage sustained by running his car into the excavation, and the case went to the jury solely on the question of any damage that may have been sustained by reason of any negligence of the defendant's employees when removing the car from the excavation. The jury brought in a verdict for the plaintiff in the amount of $250. Both parties interposed motions for judgment notwithstanding the verdict, which were denied, and judgment was entered upon the verdict. Only the defendant appealed. The plaintiff-respondent attempted to urge on the appeal that the trial court had erred in holding him guilty of contributory negligence as a matter of law and that he should have been permitted to recover for the damage sustained when he ran into the excavation. This clearly was not in support of the judgment entered.

In *Bulette v. Bremerton, supra,* the plaintiff brought an action to recover damages for the wrongful death of her husband. After a verdict for the plaintiff, the trial court granted the defendant's motion for judgment notwithstanding the verdict and denied the motion for a new trial, and the plaintiff appealed. In the opinion we said:

"The respondent complains of the ruling of the trial court that, as a matter of law, the motor scooter was an ordinary means of travel, and the rejection of its contention that it was for the jury to say whether the deceased was negligent in using such a vehicle upon the highway. The respondent, not having taken a cross-appeal, is not now in a position to claim error in this respect."

This was not an argument in support of the order appealed from, which was an order granting judgment n.o.v, but was an argument for a new trial. Whether the holding was consistent with Rule 14, Rules of Pleading, Practice and Procedure, is not now before us, but it is clear that the *Bulette* case does not, any more than does either the *Winningham* or the *Augerson* case, hold that a respondent cannot urge, in support of the judgment appealed from, any proposition or theory that it urged in the court below with-

out the necessity for a cross-appeal from the trial court's adverse ruling thereon.

At least as early as 1893 we recognized the rule

". . . that the action of the court will generally be sustained where any good reason therefor exists, although it may not have been the one which moved the court to act, and although the one relied upon by the court may have been insufficient." (*Lyts v. Keevey,* 5 Wash. 606, 609, 32 Pac. 534);

and in 1949 we reiterated it in *Lubich v. Pacific Highway Transport,* 32 Wn. (2d) 457, 464, 202 P. (2d) 270. From the many discussions of that rule in the intervening period, we quote only one:

"Appellant says the court below refused to grant the motion upon the ground of contributory negligence, holding that was a matter of defense; but based the ruling upon the ground that there was no evidence that respondent saw the appellant, or that it knew he was about to cross the street at that time and point, and further that it was not the duty of respondent to post notices in the daytime, nor to tell travelers not to cross. We are not so much concerned with the reasons for the lower court's ruling as we are with its correctness. No liability was established against respondent, and the lower court was right in so holding, whatever its reasons might have been." *Pearson v. Willapa Constr. Co.,* 72 Wash. 487, 130 Pac. 903.

We conclude that the respondent, having urged in the trial court that the appellant's cause of action was barred, is entitled to urge it here.

Appellant, being an employer engaged in extrahazardous work by way of trade or business who had the right to be covered under the workmen's compensation act as a workman if he so desired, had no cause of action for his injury against the respondent, who was at the time of the injury in the course of extrahazardous employment under the act and had made all contributions due under the act. The judgment is affirmed.

HAMLEY, DONWORTH, FINLEY, and OLSON, JJ., concur.